# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY.

### OCTOBER TERM, 1836.

---

JAMES PERKINS v. SAMUEL B. COLLINS and others.

\* Though the operations of large companies ought not ordinarily to be arrested by injunction without notice, yet it is a matter resting in the sound discretion of the court; and if a master, in the exercise of his discretion, has allowed the injunction without notice, the chancellor will not therefore, as of course, dissolve the injunction, although he might have exercised the discretionary power differently.

It is expedient, but not essential to the validity of an affidavit, that the place where the affidavit is taken should be inserted in the jurat.

The place of taking an affidavit is a matter *in pais*, and if legally questioned must be proved *aliunde*.

Where the complainant in an injunction bill relies on his own oath, the charges in the bill, and the affidavit to verify them, should be direct and positive. They must not be such as can only be made sufficient by the aid of presumption.

In all cases of waste or nuisance, it must appear clearly that the party has personal knowledge of the material facts charged, or he must produce supplemental proof.

An irregularity in the bill or affidavit upon which an injunction is allowed, is

---

\* Accord. *Ross* v. *Elizabeth-Town and Somerville Railroad Company*, 1 *Green's Chan. R.* 422; *Capner* v. *Flemington Mining Company*, ante, 467.

not waived by filing an answer and moving to dissolve the injunction, if the answer is not relied on in support of the motion to dissolve.

If an injunction is allowed upon an insufficient affidavit, it is not merely an irregularity, but an error, to which the principle of waiver does not apply.

A deficiency in the verification of the charges in the bill, cannot be supplied upon the hearing of a motion to dissolve the injunction.

MOTION to dissolve an injunction as improperly granted, after answer filed. It appears by the answer, that the nuisance complained of was occasioned by the defendants excavating and preparing a race-way, for the purpose of creating a water-power for manufacturing operations. The opinion was delivered in the vacation preceding the term of October, A. D. eighteen hundred and thirty-six.

*Wall,* for defendants, in support of the motion.

*Scott,* contra.

THE CHANCELLOR. The bill prayed an injunction against the defendants, to restrain them from excavating and digging up certain highways or streets in the city of New-Brunswick, opposite to two several lots and houses in the possession of the complainant's tenants. It charged, substantially, that the complainant was the owner of a long term of years yet to run, and possessed of an estate in two certain lots of land and premises with dwelling-houses upon them, which now are and for some time past have been occupied by his tenants, and that his estate in the same is very valuable;—That the street or highway fronting said property then was, and for a long space of time had been, used as a highway, and had been the grand avenue and entrance into the city of New-Brunswick, for more than fifty years;—That the defendants, without any right or lawful authority, have commenced, and threaten to complete and finish, a certain nuisance to the complainant, and did actually begin, on the ninth day of June, to excavate and dig the highways and streets opposite the complainant's houses, and threaten entirely to cut and open such

an excavation in the said highway, near to the place of the confluence of Neilson and Water streets, as totally to prevent all access by means of the said streets, or through the same, to the said houses and lots;—That they are actually engaged in excavating the said streets, and if permitted to proceed and carry out their intentions, the evil will be irremediable.

Upon this bill, as verified by the complainant, and explained by a map or diagram of the premises made by a surveyor, which was appended to the bill as a part of it, an injunction was ordered by an injunction master of the court, on the fourteenth of June last; and it is now moved, on the part of the defendants, to set aside and dissolve the injunction on various grounds.

And it is insisted, in the *first* place, that the injunction should be set aside, it having been issued on an exparte application, without notice.

This objection is founded on the idea, that there is a rule requiring notice of these applications to be given in certain cases. It is a mistake. There is no rule requiring notice to be given in any case, until after answer filed; and it was so declared in the late case of *Capner* v. *The Flemington Mining Company.* It has been the practice not to grant injunctions exparte, where the operations of large companies, such as manufacturing, mining and banking companies, in which the public are supposed to be in some degree interested, must be suddenly stopped, without notice and an opportunity to be heard. But it is a matter resting in the sound discretion of the court, and must necessarily be so, that the ends of justice may be effectually answered. A short delay may, in some instances, be sufficient to consummate the injury, and place the whole matter out of the reach of the preventive remedy of the court. In the case of *Tichenor* v. *The Morris Canal and Banking Company*, where a plain and open encroachment was set out in the bill, an injunction was ordered without notice. The very fact, that in every instance where notice has been given, it has been done under the order of the court, is the best evidence to show that there is no positive rule on the subject. In this case the master, acting for the chan-

cellor, has exercised the discretion with which he was clothed according to the best of his judgment; and even if the chancellor would have exercised it differently if present, it does not follow that the injunction must therefore be set aside. No statute has been violated, nor any rule of practice; and it would require a strong case to induce such an interference, on a mere difference of opinion in a matter resting in the discretion of the officer.

The *second* objection is to the sufficiency of the affidavit, and the verification of the bill. And this objection is two-fold:—
1. That the place where the oath was taken is not mentioned.
2. That the affidavit is defective in form and substance.

1. As to the *jurat*. It has been repeatedly recommended by the court, that the place should be inserted in the jurat. It is convenient and safe, and may be very important to the ends of justice; but I cannot concur in opinion that it is essential to the validity of the affidavit. The officer before whom the affidavit was taken is an officer of this court, and his authority to administer oaths in all proper cases, is coextensive with the bounds of the state—as much so as that of the chancellor. The caption of the affidavit is, " State of New-Jersey, ss.," and that is sufficient prima facie, to show to the court that the act was done within the state. The dictum, as given in *Halsted's Digest*, 174, is not satisfactory; and certainly has not been followed so far as to exclude affidavits in which the place was not stated. It probably grew out of the practice which some years since obtained for a short time, of granting special commissions to masters, whereby their authority was limited to the counties in which they respectively resided, as is the case with that of the masters extraordinary in the English chancery. That practice no longer prevails. All masters appointed since eighteen hundred and twenty-nine, are commissioned generally. The order in chancery of lord Clarendon, cited from the *Prac. Reg.* 5, has relation to these masters extraordinary, who were officers of special and limited jurisdiction, and is entitled to no weight in determining the present question: vide 1 *Har. Prac.* 17. It would seem also, that ac-

cording to the practice in New-York, the county where the affi-davit is taken must be expressed in it : 1 *Hoff. Prac.* 426 ; but this may be accounted for on the principle that in that state affi-davits to be read in chancery may be taken before local and coun-ty officers, and therefore the reason of lord Clarendon's order will well apply.   The place of taking an affidavit is a matter *in pais*, and if legally questioned must be proved *aliunde.*

This first branch of the objection is overruled.

2. The second part is, that the affidavit is defective in form and substance, and therefore that the bill is not properly verified.

The affidavit is in these words : " State of New-Jersey, ss. James Perkins, the complainant in the above bill, being duly sworn according to law, on his oath saith, that the matters and things set forth and charged as of his own knowledge, are true ; and those which are set forth as received from others, and of which the complainant was informed, he believes to be true."

This affidavit differs from every form in use.  It is special and peculiar, and taken in connection with the manner in which the facts are charged in the bill, it is radically defective.   The bill is not verified so as to warrant an injunction.

On looking into the bill, it appears that no part of the facts are charged as of the knowledge of the complainant ; nor are any of them charged as having been received from others, or of which the complainant was informed.   In what sense are the charges in this bill to be taken ?   Are they to be taken as made on the knowledge of the complainant, or on information derived from others ?   Some of them may be within his own knowledge, but as to others no such supposition can be made.   When he speaks of the excavation in the street, he may speak of his own knowledge ; but when he states that the street has been the grand avenue into the eastern part of the city for more than fifty years, he cannot be presumed to speak from personal know-ledge.

It may, perhaps, be thought, and it was so argued, that where a complainant makes a positive charge, he must be considered as making it of his own knowledge.   There is some plausibility

in the position; but it is unsafe, and the supposition can never be made where the facts, or some of them, are such as the party could not have been personally cognizant of. But if such general presumption might be made in ordinary cases, it surely should not in this. Here the complainant comes into court stating himself to be a non-resident. He lives in the city of New-York. He says he is owner for a term of years and possessed of an estate in two certain lots and houses, and that these are in the actual occupation of his tenants. He alleges no actual possession, but the contrary; and his residence is forty miles distant. When, therefore, he makes charges that the defendants are excavating the streets, are we to presume that they are made of his own knowledge? When he states that they threaten to proceed, must it be taken that the threats were made to him? If we are to go upon presumption, is it not more reasonable to conclude that he has derived most of the facts charged from information received from others?

But without pursuing these inquiries, it may be laid down as a settled principle, that in cases of this description, where the court exerts its most delicate, and at the same time its most potent authority, and that too upon the single affidavit of an interested party, the charges in the bill, and the affidavit to verify them, should be direct and positive. They must not be such as can only be made sufficient by the aid of presumption. I speak now of cases where the party relies upon his own oath. There should be no room for doubt or cavil. The reason for this strictness is obvious. The consequences of an injunction are often most serious and distressing to the party injoined; and when once properly issued, the defendant is required to answer the whole equity of the case, and that directly and of his own personal knowledge; and if his personal knowledge is not sufficient, he cannot make up the deficiency by affidavits, but must submit until a hearing can be had upon the merits.

Seeing the manner in which this bill is drawn, and the peculiar situation of the complainant as set forth in it, I am of opinion that even his verification of the bill in the ordinary form

would have been insufficient to warrant an injunction. In all cases of waste or nuisance, it must appear clearly that the party has personal knowledge of the material facts charged, or he must produce supplemental proof. There being no special charge in this bill of the party's knowledge, he should have made a special affidavit, or called to his aid the testimony of others.

As the matter is now presented, the verification is not sufficient.

It is contended, however, that this is at most but an irregularity, and is cured by filing the answer and the motion to dissolve.

A mere irregularity may be submitted to, and waived by the party affirming it by his own act: *Travers and al.* v. *Stafford,* 2 *Vesey,* 23. What constitutes such affirmance, is the question. The defendant applying for time to answer is not sufficient: 2 *Vesey,* 23, same case. Putting in answer and moving to dissolve, has been held sufficient: *Davile* v. *Peacock, Barnard. Ch. R.* 27. This means, moving to dissolve upon the answer. The party thereby puts himself upon the merits, and affirms the previous proceedings. But there is no case which goes so far as to say, that simply the putting in of the answer is an affirmance of the injunction; and if it be not, then a motion to dissolve after answer filed, but without relying on it in any way, will not be. That is the present case. The answer has been filed, and before notice of the motion to dissolve. But the defendants have not relied on it, nor were they bound to do it: *Rev. Laws,* 495. They have not, as I conceive, waived any of their rights, even if this is to be considered a case of irregularity merely.

I am inclined to the opinion, however, that this is not a question of mere irregularity. The order for the injunction, and the process itself, were founded on an insufficient affidavit, and, strictly speaking, they are not irregular but erroneous, and the principle of waiver cannot save them: *Levi* v. *Ward,* 1 *Sim. and Stu.* 334; 1 *Cond. Ch. Rep.* 170.

It was offered at the hearing to supply the deficiency in the verification, if any existed. I was induced to think favorably of

the proposition at the moment, but reflection has satisfied me that it would be a dangerous precedent to make. If the party may amend and enlarge his affidavit at the hearing, and cover its defects, why may he not amend the charges in his bill, if he discover them to be deficient, or why may he not introduce the supplemental affidavits of third persons ? There is no difference in principle, and yet such a practice could not be tolerated any more than it would be permitted to a plaintiff at law to supply any deficiency in an affidavit to hold to bail.

Without noticing, therefore, the other objections, all of which were of grave import, I shall order the injunction to be set aside, upon the ground that the bill was not properly verified.

Order accordingly.