JOHN ROSS and others v. The ELIZABETH-TOWN AND SOM-
ERVILLE RAILROAD COMPANY.

Where the charter of a railroad company authorizes the construction of the
road, but provides that "payment or tender of payment of all damages for
the occupancy of lands through which the road may be laid out, shall be
made before the company shall enter upon or break ground in the premises,
except for the purpose of surveying and laying out the road, unless the con-
sent of the owner or owners of such lands be first had and obtained;" if the
company enter upon any land in violation of such provision, for the purpose
of constructing their road, without payment or tender of damages, and with-
out the consent of the owner, it affords a clear case for the interference of a
court of equity by injunction.

In such cases it is proper to require notice of application for the injunction to
be given, wherever it can be done and save the complainant from the injury
which he seeks to avert.

The operations of a company in the construction of a great work of public
convenience, should not be suddenly arrested without notice, unless in a case
of urgent and pressing necessity; yet, where the complainants cannot be
otherwise secured in their rights, an *ex parte* order for an injunction will be
granted.

Under the charter of the Elizabeth-Town and Somerville railroad company,
before the company can take the land for the construction of their road, the
claims of all persons having rights in the land are clearly to be satisfied, as
well those who have the residuary interest as those having the present estate.

The court will refuse its aid, not merely to a party who fraudulently misrepre-
sents his title, but also to one who remains silent when duty, candor and fair
dealing require him to speak out.

INJUNCTION bill, filed May 1st, 1841, by the children and
heirs at law of John Ross, late of the county of Somerset, de-
ceased, states, that the said John Ross, before and at the time
of his death, was seized in fee simple and possessed of a large
tract of land, situate in the township of Bridgewater, in the
county of Somerset, and being so seized and possessed thereof,
made and executed his last will and testament in due form of
law to pass real estate, bearing date the 26th day of January,
1808; and thereby, among other things, after providing for the
payment of his debts, gave one third of the residue of his estate

to his widow, Martha Ross, during her widowhood; and to his sons, John, Joseph, Peter, James and William, he gave each two shares; and to his three daughters, Sarah, Martha and Esther, he gave each one share of all the residue of his estate, after the payment of his debts; and in case of the death of either of his children before attaining the age of twenty-one years, he gave his or her share so dying to the survivors.  The will further directs, that the estate should not be divided until the youngest child attained the age of twenty-one years.  That the testator died in the year 1808, leaving the said will in full force, in no wise altered or revoked, and leaving him surviving eight children, the devisees named in his will, viz., Sarah, who hath since intermarried with Jeremiah Parsells, John Ross, Martha Ross, who married Isaac Staats and afterwards died, leaving one daughter, Margaret, who intermarried with Reuben Freeman, Esther Ross, who hath since intermarried with David R. Runyan, and Joseph Ross, Peter Ross, James Ross and William Ross.  That on the 28th day of March, 1808, the executors named in the said will duly proved the same, and took upon themselves the burthen of the execution thereof, and the said will was duly recorded in the surrogate's office of the said county of Somerset.  That after the decease of the testator, his widow, the said Martha Ross, with the assent of the devisees named in the will, remained in the possession and enjoyment of the devised premises, from the death of the testator until the year 1828, when the devisees, by deed of assignment dated the 2d day of April, 1828, assigned and set off to the said widow, Martha Ross, as and for her dower in the real estate of the said John Ross, deceased, two certain lots of land, with the appurtenances in the said deed particularly described, to hold to the said Martha Ross during her natural life.  That from the date of the said assignment, the said Martha Ross hath remained in possession of the premises conveyed by the said assignment, and hath received the rents, issues and profits thereof.  That on the 29th day of May, 1829, James Ross, one of the children and devisees of the said John Ross, deceased, together with his wife, by deed of re-

lease bearing date on the day and year last aforesaid, for the consideration of three hundred and sixty dollars, released to his brothers, John, Joseph and William, three others of the devisees in the said will named, all his estate and interest in the premises so as aforesaid assigned to the said Martha Ross, for her dower in the real estate of the said testator; which said release was duly acknowledged, and on the 30th day of May, 1829, was recorded in the clerk's office of the said county of Somerset.

That on the 9th day of February, 1831, the council and general assembly of the state of New-Jersey, passed an act, entitled, "An act to incorporate the Elizabeth-Town and Somerville railroad company;" by the sixth section of which said act it is enacted, that the president and directors of the said company be, and they are hereby authorized and invested with all the rights and powers necessary and expedient to survey, lay out and construct a railroad or lateral roads, from one or more suitable place or places in the village of Somerville, to one or more place or places in Elizabeth-Town, passing as near as practicable through Bound-Brook, Plainfield, Scotch Plains and Westfield, not exceeding sixty-six feet wide, with as many sets of tracks and rails as they may deem necessary; and it shall be lawful for the said president and directors, their agents, engineers, superintendents, or others in their employ, to enter at all times upon all lands or water, for the purpose of exploring, surveying, levelling or laying out the route or routes of such railroad or lateral roads, and of locating the same, and to do and erect all necessary works, buildings and appendages thereof, doing no unnecessary injury to private or other property: and when the route or routes of such road or lateral roads shall have been determined upon, and a survey of such route or routes deposited in the office of the secretary of state, then it shall be lawful for the said company, by its officers, agents, engineers, superintendents, contractors, workmen and other persons in their employ, to enter upon, take possession of, hold, have, use, occupy and excavate any such lands, and to erect embankments, bridges, ferries, and all other works necessary to lay rails, and to do all other things which shall be

suitable or necessary for the completion or repairs of the said road or roads, subject to such compensation as is herein after provided : Provided always, that the payment, or tender of the payment, of all damages for the occupancy of lands through which the said railroad or railroads may be laid out, be made before the said company, or any person under their direction or employ, shall enter upon or break ground in the premises, except for the purpose of surveying and laying out said road or roads, unless the consent of the owner or owners of such lands be first had and obtained.

And by the seventh section of the said act it is further enacted, that when the said company or its agents cannot agree with the owner or owners of such required lands or materials for the use or purchase thereof, or when, by reason of the legal incapacity or absence of such owner or owners, no such agreement can be made, a particular description of the land or materials so requir-ed for the use of the said company, in the construction of the said road, shall be given in writing, under the oath or affirma-tion of some engineer or proper agent of the company, and also the name or names of the occupant or occupants, if any there be, and of the owner or owners, if known, and their residence, if the same can be ascertained, to one of the justices of the su-preme court of this state, who shall cause the said company to give notice thereof to the persons interested, if known and in this state, or if unknown or out of this state, to make publication thereof, as he shall direct, for any term not less than twenty days, and to assign a particular time and place for the appoint-ment of the commissioners herein after named, at which time, upon satisfactory evidence to him of the service or publication of such notice aforesaid, he shall appoint, under his hand and seal, three disinterested, impartial and judicious freeholders, not resi-dent in the county in which the lands or materials in controversy lie, or the owners reside, commissioners to examine and appraise the said land or materials, and to assess the damages, upon such notice to be given to the persons interested, as shall be directed by the justice making such appointment, to be expressed therein,

55

not less than twenty days: And it shall be the duty of the said' commissioners, having first taken and subscribed an oath or affirmation before some person duly authorized to administer an oath, faithfully and impartially to examine the matter in question, and to make a true report, according to the best of their skill' and understanding, to meet at the time and place appointed, and proceed to view and examine the said lands or materials, and to make a just and equitable estimate or appraisement of the value of the same, and assessment of damages, and shall be paid by the company for such lands or materials, and damages aforesaid; which report shall be made in writing, under the hands and seals of the said commissioners, or any two of them, and filed within ten days thereafter, together with the aforesaid description of the land or materials, and the appointment, and oaths or affirmations aforesaid, in the clerk's office of the county in which the lands or materials are situate, to remain of record therein; which report, or a copy thereof certified by the clerk of said county, shall at all times be considered as plenary evidence of the right of the said company to have, hold, use, occupy possess and enjoy the said land or materials, or of the said owner or owners to recover the amount of said valuation, with interest and costs, in an action of debt, in any court of competent jurisdiction, in a suit to be instituted against the company, if they shall neglect or refuse to pay the same for twenty days after demand made of their treasurer, and shall, from time to time, constitute a lien upon the property of the company, in the nature of a mortgage; and the said justice of the supreme court shall, on application of either party, and on reasonable notice to the others, tax and allow such costs, fees and expenses, to the justice of the supreme court, commissioners, clerks and other persons performing any of the duties prescribed in this section of this act, as they or he shall think equitable and right, and to order and direct by whom the same shall be paid, under the circumstances of the case.

The bill further states, that the Elizabeth-Town and Somerville railroad company have proceeded to construct a railroad

from Elizabeth-Town to Bound-Brook, and are now engaged in an effort and attempt to extend the same beyond Bound-Brook to Somerville. That they have not only entered upon the said tract of land devised to the children of the said John Ross, and assigned to the said Martha Ross for her life, (and which in the bill of complaint is particularly described,) for the purposes of exploring, surveying, levelling and laying out the route of the said railroad and of locating the same, but under pretence of considering the said Martha Ross as the owner of said lands, on the 30th day of November, 1840, the said company applied to Joseph C. Hornblower, chief justice of the state of New-Jersey, as the complainants have since understood, for the appointment of commissioners to examine and appraise the said lands, or so much thereof as the said company may require for the construction of their road, and that upon such application the following was alleged to be a particular description of the lands thereby declared to be owned and possessed by the widow Martha Ross, of the township of Bridgewater, in the county of Somerset, where the said lands are situate required for the use of the said company, for the construction of their said railroad, over the lands of the said Martha Ross, who now occupies the same, and for which the company cannot agree with the said Martha Ross for the purchase thereof, to wit: [description by metes and bounds.] That it appears by reference to said proceedings, that the 30th day of December then next, was assigned by the chief justice for the appointment of commissioners to examine and appraise said lands so required and to assess the damages, and the said company were by the order of the said chief justice directed to give notice thereof in writing to the said Martha Ross, and such notice was accordingly given, and such commissioners were appointed, and authorized by such appointment to examine and appraise the lands so required as aforesaid, and to assess the damages to be paid by the company therefor, upon notice to be given to the said Martha Ross. And the said commissioners, upon proof being made of the service of notice upon the said Martha Ross only of the time of making such examination, appraisement and

assessment, did, on the 24th day of February, 1841, report that the sum of thirteen hundred dollars should be paid by said company for the said lands and damages, and that a receipt of the said Martha Ross for the said sum of thirteen hundred dollars is endorsed upon the said proceedings. That no notice having been given to the complainants, or either of them, of the institution and prosecution of the proceedings aforesaid, the same, with the appraisement and estimate of damages, could have been intended to apply only to the life estate of the said Martha Ross. That express notice was given by the said Martha Ross to the agents and officers of the Elizabeth-Town and Somerville railroad company, before the institution of the said proceedings, that she had only a life estate in the premises, and that the fee was in her children ; that no notice was given to the complainants, or either of them, in conformity with the provisions of the said act, of the application to the chief justice for the appointment of commissioners ; and that some of the complainants, for themselves and on the behalf of the others, protested before the said commissioners, against their proceeding to make any valuation or assessment in the premises ; and that the said commissioners were informed by one of the complainants, that the said Martha Ross was not the owner in fee of the said premises. That the injury which will be sustained by the said premises by reason of the construction of the railroad, will be great, permanent and irreparable ; that the house will be rendered untenantable, that all communication between the house and the other part of the premises will be intercepted by the depth of the cut and excavation, that the facilities for entering the barn and stable will be destroyed, and that the buildings will be constantly exposed to the danger of being burnt by fire from passing locomotive engines ; and that it has been generally reported and believed that the defendants are insolvent and unable to respond in damages. The bill prays that an injunction may issue to restrain the defendants from removing fences or buildings, breaking ground, or making any excavation upon the premises for the purpose of constructing their railroad.

Upon filing the bill an injunction was allowed by one of the masters of the court.

On the 8th day of May, 1841, on the application of the defendants, an order was made requiring the complainants to show cause, on the 21st day of May instant, why the injunction should not be dissolved, and that both parties should be at liberty to take affidavits to be used on the hearing. In pursuance of the rule, affidavits were taken by both parties, and the hearing having been postponed by consent, on the 14th of June the defendants filed their answer.

The answer admits that John Ross died seized of the premises, having duly executed his will to pass real estate, and that he died about the year 1808, leaving him surviving his widow and eight children, as set forth in the complainants' bill; that the widow was in possession at and after the death of her husband, and has ever since continued in possession. States that on the 9th day of February, 1831, the council and general assembly of the state of New-Jersey passed an act, incorporating the Elizabeth-Town and Somerville railroad company, and that the said company have at very great expense constructed and put in operation the railroad from Elizabeth-Town to Bound-Brook, a distance of twenty miles and a half, and that in order to finish the road from Bound-Brook to Somerville, as the defendants are by their charter enjoined to do, they by their agents called on Martha Ross, who was in possession of the premises, the road having previously been located and staked out through the same, to whom the said Martha Ross stated that she was the sole owner of the said premises, and entitled to receive compensation for the land and damages; that John Ross, one of the complainants, and who acts as the agent of the others, expressly stated that the premises belonged to his mother; that it was well known to the complainants, before the application to the chief justice for the appointment of commissioners, that the road would cross the premises in possession of the said Martha Ross; that before making said application, the company endeavored to make an agreement with the said Martha Ross for the said land and dam-

ages, and for this purpose two officers of the company called upon her, and in the presence of two of her children, the complainants John and William Ross, and with their knowledge, endeavored to agree with her for the same; and that John Ross, one of the complainants, then represented that the land was his mother's, and manifested much anxiety that the amount to be paid to her by the company should be amicably agreed upon; that all the complainants well knew that the company were endeavoring to agree with the said Martha Ross for the said land and damages, without informing the company, or in any way intimating to them, or to their agents, that they had any right in the premises. Admits that the company are engaged in the construction of the road, and that it is located, as set forth in the bill of complaint; and that the defendants are about to enter for the purpose of constructing their road, and that they made application to Joseph C. Hornblower, chief justice, for the appointment of commissioners, as set forth in the bill of complaint. States that the said chief justice appointed James Parker, Gideon Ross and William Stites commissioners, who met upon the premises on the 24th day of February, 1841; that one of the complainants appeared before the chief justice on behalf of the said Martha Ross; that several of them appeared before the commissioners, and endeavored to prevail on them to allow the said Martha Ross a larger sum for the land and damages. That the said commissioners awarded to the said Martha Ross, as the owner of the said land, thirteen hundred dollars for the land and all damages; and that the said sum is a large and full price for the fee simple of the land taken by the company and for all damages. That before the defendants attempted to enter on the land, they paid to the said Martha Ross the said sum of thirteen hundred dollars, and took her receipt for the same; that the said sum was paid to the said Martha with the knowledge of several of the complainants, and without any objection on their part, or any claim of right by them in the premises. That the defendants had no knowledge of any person having any interest in the said premises except the said Martha Ross, and that they were

led to the belief that she was the sole owner by the representations of some of the complainants, and that no notice to the contrary was at any time given by the complainants or any of them. Denies that either of the complainants protested before the commissioners against any proceeding towards a valuation, appraisement or assessment, but admits that one of the complainants objected, without stating his reasons for so doing. Denies that the commissioners were informed by either of the complainants that the premises did not belong to the said Martha Ross. Denies that the injury to the premises will be great or irreparable, and also that the defendants are insolvent, or unable to respond in damages. The answer, as well as the bill, was accompanied by numerous affidavits, verifying the facts therein stated.

The cause came to hearing on the 28th of June, 1841, at a special term held at Newark, upon the rule to show cause why the injunction should not be dissolved.

*Scott* and *H. W. Green,* for complainants.

*Thomson* and *I. H. Williamson,* for defendants.

Cases cited by defendants' counsel. *Savage* v. *Foster,* 9 *Modern,* 35; *Berrisford* v. *Milward,* 2 *Atkyns,* 49; *East India Co.* v. *Vincent,* 2 *Ibid,* 83; *Arnot* v. *Biscoe,* 1 *Vesey, sen.* 95; *Bening* v. *Brown,* 3 *Ridgway's Parl. Rep.* 518; *Wendell* v. *Van Renselaer,* 1 *John. Chan. R.* 350; *Higinbotham* v. *Burnet,* 5 *Ibid,* 184; *Storrs* v. *Baker,* 6 *Ibid,* 166; *Crawford* v. *Bertholf, Saxton,* 460; 17 *Wendell,* 151.

THE CHANCELLOR. By the act incorporating the Elizabeth-Town and Somerville railroad company, the president and directors of the company are authorized to lay out and construct a railroad from Elizabeth-Town to Somerville, and by a supplement to the original act they may extend the road to the Delaware river. For this purpose, liberty is given to them, their agents and others in their employ, at all times to enter upon any

[Ross et al. v. Eliz.Town and Somerville Railroad Co.]

lands in their route, for the purpose of exploring, surveying and laying out the road ; but they are forbid, in express terms, from proceeding to excavate, to lay their rails, or in any way to take permanent possession of any lands (except by consent of the owners) until they pay or make a *tender of payment to such owner*, all damages which such occupancy shall occasion. And in cases where the company cannot agree with landholders, a further provision is made for the appointment of commissioners, by one of the justices of the supreme court, to assess the damages. The complainants, in this bill, state themselves to be the devisees in remainder of John Ross, of a lot of land on the route of this road, of which their mother, Martha Ross, is in possession as tenant for life, under an assignment of dower. The will of their father is set out in the bill, and the provisions thereof are plain and according to the complainants' statement. It is then charged, that the defendants have actually entered upon the said lot, and are proceeding to remove the fences and *to make the necessary excavations*, and thus to commit an irreparable injury to their property, without first paying or tendering payment of damages, according to the provisions of their charter. Upon this case, the master to whom application was made granted an injunction, restraining the defendants *from taking possession of this land* until the court should otherwise order. The case presented by this bill was a plain one for the interference of this court, nor, indeed, has any thing to the contrary been urged by the defendants on the argument, except that they feel themselves aggrieved at being thus stopped in their operations, without being notified of the application for the injunction. I agree that it is the dictate of propriety, in cases like the present, to direct notice of an application for an injunction to be given, whenever it can be done and save the complainant from the injury which he seeks to avert; but there are a great many cases continually arising, where to take this course would defeat the great end in view, that of preventing an injury. In this very case, the bill charges that the company had actually entered upon the land, and were proceeding to excavate. Had notice been given, all

the injury might have been inflicted before the day for hearing arrived. While, therefore, it is to be carefully looked to, that the operations of a company in the construction of a great work of public convenience be not suddenly stopped without a case presented of an urgent and pressing necessity, yet I do not see how the master could, in the present instance, have secured the complainants in their rights, without making the *exparte* order. If the doctrine so strongly urged, that notice upon every application for an injunction must be given, is to prevail, it would be better to go farther, and put an end to the whole power of the court in granting them at all. It is admitted to be a delicate power, which calls for great firmness and discretion in its exercise; but it is at the same time, as all must agree, an indispensable power to reside somewhere.

The defendants have answered this bill, and have further obtained an order allowing both parties to take affidavits, and the motion to dissolve the injunction has been fully heard upon the answer and affidavits. The case made by the defendants may be thus shortly stated. Martha Ross, the widow, being in possession, the company supposed she alone had the right to the property, and they went on under their charter, got commissioners appointed, who awarded to her thirteen hundred dollars, the entire damages to the property, and which they have paid to her and taken her receipt. That the commissioners have assessed the damages under the belief that Mrs. Ross had a fee in the lands, and that the officers and directors acted under that impression, cannot be doubted, for they all so positively swear. The company, then, have gone on in good faith, and obtained, as they supposed, in legal form, the right to lay their road on the land in question.

It is not contended that the company have a right to take land for the road upon a settlement with the party holding the present interest. Such a construction would be opposed to the intent and object of the provision, which designs nothing more nor less than that the land to be occupied by the line of the road shall first be paid for, and to those who have rights in the same.

56

CASES IN CHANCERY,

Those in remainder have therefore as strong, and in many cases a much stronger claim for damages than the present occupant. The words of the act also favor this construction; for in the seventh section, upon the application to a justice of the supreme court for the appointment of commissioners, a description of the property is required to be given to such justice, with " the name of the occupant *and owner or owners.*" The claims of all persons having rights in the land are clearly to be satisfied, as well those who have the reversionary interest as those having the present estate. Nor is there any pretence that any proceedings have been had directly with the complainants, and for the reason that the defendants do not appear to have understood how the title to the property stood, or that any other person than the widow had a claim to it.

The only serious question raised by the defendants, is, that these complainants, who are the children of Martha Ross, and several of whom have acted for her in obtaining damages from the company, stood by and saw the company go on blindfold, under a conviction that their mother had the estate in fee, and that after having thus acted and concealed their title, they have forfeited all claim to the equitable interference of the court. A number of cases were cited, establishing beyond question the doctrine, not merely that the court will refuse its aid to a party who fraudulently misrepresents his title, but if he observes a silence when duty and candor and fair dealing require him to speak out. The case in 2 *Atkyns*, 49, was of this character. There the mortgagee stood by and saw the lands agreed to be settled by the mortgagor to secure *the terms* of a marriage contract, and fraudulently concealed his mortgage : it was held that the land should be held against the mortgagee and his heirs. So in 2 *Atkyns* 83, where a person having title to land suffered another to go on and erect buildings upon it under a mistake, without informing him of his error, and when he knew he was doing so under a mistake, it was decided that the land should be held without disturbance from this title. The doctrine is fairly stated, and the cases referred to, in 1 *John. Chan.* 354. The

[Ross et al. v. Eliz.Town and Somerville Railroad Co.]

chancellor, in that case, says, "There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares, that if one man knowingly, though he does it passively by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel." In 1 *Story's Equity*, 379, the same principle is recognized, and it is said to proceed on the ground of its being a constructive fraud. There is something in this doctrine which must meet the approbation of every intelligent man, and its application to the case before us is striking. If, therefore, these complainants have stood by, concealing their title, and have seen the defendants taking steps to ascertain the damages to be paid their mother, under a mistaken idea that she was the sole owner, and have not undeceived them, even though they may never have been inquired of respecting it; they cannot, under the authority of the cases referred to, and should not, have the aid of this court now to enforce a further payment to them, or to embarrass the progress of the company. This being the true principle which must govern this case, the decision must turn entirely upon the state of the facts. Did the complainants conceal their title from the defendants, or not?

On the part of the defendants, as well by the answer as by the affidavits of the officers and directors, it is manifest that the company have acted under a total misapprehension as to the true state of things respecting this land. They supposed Martha Ross was the owner in fee, and accordingly treated with her in that right. The commissioners certainly made their award under that idea, and the complainants, or some of them, acted as the agent of their mother, and advised in all her proceedings. The affidavits of those who acted on the part of the company, are explicit that they acted throughout under this mistake, and they deny having received any information to the contrary. If

the evidence stopped here, there could be no hesitation in putting an end to this injunction; but we are to look to the affidavits presented on the other side, and I must say, if those affidavits are correct, there has been the most unaccountable blindness on the part of the managers of this company that I have ever witnessed. They must have shut their eyes fatally to their own interest, or they surely would never have gone against knowledge to their own injury. I can reconcile the affidavits on the part of the complainants, with the course of the defendants, in no other way than by supposing, if the information was ever communicated to them, it passed from their memory. The affidavits on the part of the complainants, show that the situation of the title to this property was no secret; every person in the neighborhood knew it had belonged to John Ross, and was assigned to Mrs. Ross as her dower right. All the witnesses concur in this. They show that John W. Bray, who at one time acted for the company, and in one case, as testified to, obtained an agreement for land under which they have entered, was informed of the true condition of the title to this property, and made full inquiry into the situation of the family. This evidence is not contradicted. They show, and by several witnesses, that at the time the commissioners were appointed by the chief justice, the subject of the title not being in Mrs. Ross was spoken of, and the witnesses say it was assigned as a reason why a settlement could not be made at that time, as only one of the heirs was present; that it was stated publicly in the room where a number of those interested in the company were, and was spoken of as a thing well understood by all. They show, that when the commissioners met, judge Stites, one of the commissioners, asked John Ross, one of the sons, if the title of the lot was in Mrs. Ross, and he answered that it was not; that Mr. Parker, one of the commissioners, then said, it was not their business to try titles, but to ascertain the amount of the damages. Judge Stites, in his deposition, admits that he did make the inquiry about the title, and was informed that it was not in Mrs. Ross, but that something was said which gave a check to further explanation,

and he did not press the inquiry, supposing it might involve a question of delicacy between Mrs. Ross and her children. O. Morton, in his affidavit, says, that in the month of April he had a conversation on this subject with judge Taylor, (who is admitted to have been among those authorized to act on the part of the company,) who said he was aware that Mrs. Ross could not make a valid title to the property, the fee simple not being in her, and therefore they had taken another course and obtained possession through commissioners. John H. Voorhies, another witness, says, that at the time the commissioners met he had a conversation with William Thompson and John J. Bryant, who were acting for the company, or one of them, and he thinks with both, and told them that the fee simple of the land was not in Mrs. Ross, that she had only a life right, and that they manifested no surprise at the information, but seemed to be aware of it; and he thinks he has on other occasions mentioned the same fact to them. Another witness also states that he communicated the same information to Mr. Kellogg, who was acting in behalf of the company; and Mrs. Ross swears, that she on more occasions than one, gave the agents of this company notice, that she did not own the fee of this land, but that it belonged to her children; and several of the complainants have also sworn, that they never have asserted to any person that their mother had the title, or concealed the true state of facts respecting the property. This is the outline of the complainants' affidavits. Opposed to all this, the agents of the company declare they never did receive the information that the title was not in Mrs. Ross, but always acted under the belief that she had the entire right. There is a most palpable contradiction in the affidavits, and which I confess I am wholly unable to reconcile.

Without being able to harmonize this evidence, and without meaning to say which is right and which is wrong, I cannot feel myself at liberty to reject all this testimony, and to declare that the complainants have concealed the situation in which this property stands, so as to forfeit their claim to the aid of this court. There is too much affirmative evidence to justify me in such a

[Ross et al. v. Eliz.Town and Somerville Railroad Co.]

course. That the complainants have not acted with that becoming frankness which they should have done, is impressed forcibly upon my mind ; but still, if the subject was talked of at the time the commissioners were appointed, and at the time they met, was repeatedly stated by Mrs. Ross, and more especially if there be any truth in the repeated instances named in which the information is said to have been communicated to the agents of the company, then, certainly, it is going too far to say that there has been such a concealment as to defeat the complainants on the ground of fraud.

The complainants, then, in my view of this case, are entitled to have their damages paid or tendered, before the defendants can lawfully take possession of the land, unless it be shown that they have been guilty of a fraud in concealing their title; the evidence not being satisfactory on that point, I do not feel myself at liberty to dissolve the injunction.

There is one fact that should be referred to, and that is, that the complainants delayed giving a written notice of their claim until their mother had been paid, and then promptly served one. This has a bad appearance, and can only be excused on the ground that, until that took place, they were in no danger that the company would enter upon the land. This part of the case must still depend on the question already decided, whether the complainants practised a fraud by concealing their title.

Motion to dissolve the injunction denied. Costs to abide the event.