The appeals are from orders and a decree of the Court of Chancery. The suits are related and arise under the provisions *Page 524 
of the New Jersey Securities Law, R.S. 49:1-1, et seq., known as the "Blue Sky" Law.
The statute prohibits the sale of securities by fraud or by illegal practices as therein defined. It also provides, R.S.49:1-5:
"When it shall appear to the attorney-general * * * that a person * * * has engaged in, is engaging in, or is about to engage in, any practice declared to be illegal and prohibited by this chapter, or when he believes it to be in the public interest that an investigation should be made to ascertain whether a person * * * in fact has engaged in, is engaging in, or is about to engage in, any such practice, he may:
(a) Require or permit such person * * * to file with him on such forms as he may prescribe, a statement or report in writing under oath or otherwise, as to all the facts and circumstances concerning the issuance, sale, offer for sale, purchase, offer to purchase, promotion, negotiation, advertisement or distribution of securities, within or from this state, by such person * * * and such other data and information as may be relevant and material thereto;
"(b) Examine the promoter, seller, broker, dealer, negotiator, advertiser and issuer of any such securities * * *, under oath, and examine any record, book, document, account or paper that may be relevant or material to the inquiry * * *."
and it further provides that if the person shall fail or refuse to comply with the demand so made upon him the Court of Chancery may, on application of the Attorney-General and proof thereof, by summary proceeding and upon such notice as the court may direct, grant a writ of injunction restraining such person from undertaking to deal in securities within or from this state until he shall file the required statement and comply with the subpoena. The statute runs against residents and non-residents alike.
In each of the appealed cases the Attorney-General, conceiving that it was in the public interest that investigation should be made to ascertain whether the defendant had been, or was, or was about to be engaged in one of the prohibited practices, caused a notice, in form and by title a subpoena ad testificandum, to be served by registered mail outside of the jurisdiction, and upon failure of the noticed person to appear sued from the Court of Chancery an order to show cause why subpoenas should not issue and why a restraint, pending compliance, *Page 525 
should not go. Those orders were likewise served, under court direction, by registered mail outside the jurisdiction. Roberts appeared specially by permission of the court, agreeing that if the decision should go against him he would appear generally, and endeavored, without success, to set aside the service. Edwards and Baird asked permission to appear specially for the same purpose but without stipulating upon a conditional general appearance and were denied. Decrees were entered which in effect made the respective orders absolute; they directed specifically (1) that process of subpoena and of subpoena duces tecum issue, (2) that the respective defendants and those acting in aid of them give testimony and produce books and papers as required, and (3) that each "defendant, his agents, employees, brokers, partners, officers, directors and stockholders, as well as all persons acting in aid or assistance of them, or any of them, be and they are hereby, jointly and severally, restrained and enjoined from the issuance, sale, offer for sale, purchase and offer to purchase, promotion, negotiation, advertisement and distribution within and from this state of any securities until the filing of the statement and report hereinbefore mentioned, the compliance with the subpoena and subpoena duces tecum
hereinbefore mentioned, the production specified therein, the giving of testimony, the answering of questions, the completion of the complainant's investigation of said practices of the defendant, and until this court shall otherwise order." Edwards and Baird appeal from the orders denying leave to enter unconditional special appearances; Roberts, from the final decree. Roberts assumes also to appeal from the denial of his motion, on special appearance, to set aside service of the order; but we find no petition of appeal in the state of case as to that judicial act. However, it appears that the issue that would have been presented by such an appeal is within the scope of our decision.
The contentions are that the Court of Chancery erred in refusing Edwards and Baird the privilege in limine of appearing specially and unconditionally to attack the service of the rules; and that the decrees are in personam and that, therefore, both independently of constitutional provision and specifically *Page 526 
under the limitations in paragraph 1 of article I of our state constitution and section 1 of the Fourteenth Amendment to the United States constitution, the exterritorial service of process and the pertinent statute if it authorizes such service, are void. The suit and the service were clearly within the statute and there is no serious argument to the contrary. We discover no ground for the contention that any phase of the proceedings is invalid independent of constitutional provision. Obviously, if, as we hold herein, the character of service was adequate to sustain the relief sought by the Attorney-General, the appellants were not harmed by the court's refusal to permit two of them, unconditionally, to appear specially in order to attack the service. The contest resolves itself, therefore, into one of constitutionality. We have sustained the general authority of the state to make demand under the statute and to proceed with injunctive relief on non-compliance. Katzenbach v. Tomadelli,c., Corp., 104 N.J. Eq. 217. The validity of service of process by registered mail directed to the defendant's address outside the state, under our Securities Law, has been upheld in Chancery,Stevens v. Television, Inc., 111 N.J. Eq. 306, but has never been directly passed upon in this court.
The primary question, then, is whether the suits are within the class of actions in personam, which, under Pennoyer v. Neff,95 U.S. 714; 24 Law Ed. 565, must be accompanied, if against a non-resident, by personal service of process within the jurisdiction.
In each case the Chancery decree last made is nominated a "final decree." That is a misnomer. The defendants are forbidden to deal in securities within the state until they shall submit to the inquiry sought to be made on behalf of the state. Such a prohibition is in the nature of a preliminary restraint regardless of the name applied to the paper. The title was doubtless given by way of distinguishment from the order to show cause which also contained a restraint.
The inherent difficulty, if not the impossibility, of serving any notice upon the defendants within this jurisdiction appears by their own statements. It was in the City of Toronto, Dominion of Canada, that the various papers were *Page 527 
served. Baird admits that he resides in Toronto and has his office there; Roberts, that he is a British subject, resident and domiciled in Toronto and the editor of a newspaper published there; Edwards, that he, too, resides there. No one of the three denies that he purposes to come within the state to traffic in securities; and no satisfying explanation is given as to how any of them, in the absence of such a purpose, would suffer from the restraint imposed. Full notice is acknowledged; the legality of notice, per se, to support the proceedings is disputed. Do our constitutional provisions require that a dealer in securities must be brought into court by such a process as would support a judgment against him in personam before he may be put to the election of either submitting the bona fides of his conduct as a dealer and the worthfulness of his securities to a duly authorized state officer, or of refraining from dealing in securities within the state? And if he is keeping himself outside the jurisdiction, with the result that such process may not be served, is a sovereign state powerless to protect its public against his coming surreptitiously within its borders and accomplishing his purpose? We think not. So far as the present issues go there was no need for technical process; that which is called process may be regarded merely as statutory notice that the defendants could not do business here unless they complied with the regulatory requirements. The question of what character of notice of the restraint would lay the individual open to punishment under contempt proceedings or otherwise for disobedience is not before us.
The cases lose much of their difficulty if it be considered that the Attorney-General's position is analogous to that of a licensing officer and that the decrees go no further than to enjoin a dealer from engaging in the security business within the state until he shall have gone through the procedure of appearing and submitting the facts incidental to an application. The salient questions then become whether the proposed business is a fit subject for licensing and whether the legal principle may be given application in certain instances without requiring all security dealers to proceed in that manner. *Page 528 
The propriety of subjecting dealers in securities to regulatory control is clear. Enactments which prohibit such dealers from engaging in business without first securing a license from a specified state official do not offend the federal constitution,Hall v. Geiger Jones Co., 242 U.S. 539; 61 Law Ed. 480.
Likewise state statutes forbidding the sale of securities which have not first received the approval of a designated body, obtainable only after prescribed data have been filed, have been held constitutional. Caldwell v. Sioux Falls Stock Yards Co.,242 U.S. 559; 61 Law Ed. 493; Merrick v. N.W. Halsey Co.,242 U.S. 568; 61 Law Ed. 498. True, control, under our statute is not, either by the legislation or in practice, put in operation against all dealers, which is to say that every person who sells securities within the state is not compelled to appear and submit to inquiry, but the law is applicable to all dealers and is not, we believe, discriminatory. The opportunity for fraud in the sale or exchange of securities is manifest, and bitter have been the experiences of many who have relied upon the representations of dishonest dealers, and even upon the representations of honest dealers, in the handling of dishonest securities. It is, we think, within the reasonable exercise of the police power of the state, the difficulty of the subject-matter considered, to give freedom of business activity to securities dealers, subject to inquiry at the instance of the state's ranking legal officer and to restraint upon refusal to submit to inquiry. That procedure appears to be within the purview of article 23A of the General Business Law of the State of New York (Consol. Laws c. 20, added by Laws 1921 c. 649), which is said to be the original from which certain parts of our own statute were taken; and that law has been sustained by the Court of Appeals of New York against attack for alleged infraction of the state and federal constitutions; Dunham v. Ottinger, 243 N.Y. 423;154 N.E. Rep. 298.
The Chancery direction that subpoenas issue against the defendants and that they and their aides disclose pertinent information was incident to the injunctive restraint. From the time of our earliest decisions preliminary restraints in appropriate cases have issued on bill and affidavit without *Page 529 
the service of formal process and, when the occasion justified, without advance notice that issuance was proposed or sought.Buckley v. Corse, 1 N.J. Eq. 504; Perkins v. Collins, 3 N.J. Eq. 482
(at p. 484); Ross v. Elizabeth-Town and SomervilleRailroad Co., 2 N.J. Eq. 422.
The terms in personam and in rem came into our jurisprudence from the civil or Roman law where they seem to have been comprehensive and to have been always used in contradistinction to each other. They are of importance in our legal system in determining the character of process necessary to institute suit; and here, too, the effort has been to maintain a sharp distinction. But nice accuracy has more than once yielded to the exigencies of a developing jurisprudence, and that which is not strictly a "thing" has nevertheless been given the significance thereof in order to keep the power of the law abreast of changing conditions. Two of our foremost jurists of a generation ago divided upon the question whether, given that the matrimonial domicile was in this state, our Court of Chancery on a bill filed by the wife could enjoin the husband by process served outside the jurisdiction from prosecuting a suit for divorce in another state. Mr. Justice Dixon, writing the opinion for this court, held that the matrimonial status had a situs, resembling, for the time being, the situs of land, that a proceeding respecting that status was quasi in rem and that consequently Chancery had jurisdiction; Mr. Justice Garrison dissented upon the ground that the decree below was purely personal and could be sustained only by the creation of a new form of action, Kempson v. Kempson, 63 N.J. Eq. 783. We need not decide whether or not the court had, in fact, devised a new form of action; enough to note that the insertion of the word"quasi" gave a new meaning to an old expression and so enabled that which was not property to assume an attribute of property. And the decision in Pennoyer v. Neff, supra, conceded that while in a strict sense a proceeding in rem was one taken directly against property, the term had come to be used in a larger and more general sense where the proceedings weresubstantially in rem and, further, that the court did not mean to assert that a state might not authorize proceedings to determine *Page 530 
the status of one of its citizens towards a non-resident which would be binding within the state, though made without service of process or personal notice to the non-resident, or that a state might not require a non-resident making contracts enforceable there to appoint an agent or representative in the state to receive service of process with respect to such undertakings and upon failure of the non-resident so to do provide for service in some other prescribed way. We take it that the exceptions so stated were illustrative rather than comprehensive. An additional exception was recognized in Hess v. Pawloski, 274 U.S. 352;71 L.Ed. 1091, wherein it was held that a state statute declaring that the use of its highways by non-resident operators of motor vehicles is the equivalent of the appointment by such non-resident of the state registrar as agent upon whom process may be served for starting proceedings against him growing out of collision or accident in which he is involved on a highway, was not a denial of due process of law under the Fourteenth Amendment to the federal constitution but was a valid exercise of the police power. Hess had not filed an authorization for service of process and had not entered into a partnership or association within the State of Massachusetts or made contracts enforceable there or otherwise come within the exceptions specifically named in Pennoyer v. Neff. But the court said: "Motor vehicles are dangerous machines, and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and non-residents alike, who use its highways. The measure in question operates to require a non-resident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights." The essential element which runs through the cases (see Washington v.Superior Court, 289 U.S. 361; 77 L.Ed. 1256; Kane v. NewJersey, 242 U.S. 160; 61 L.Ed. 222; Wuchter v. Pizzutti,276 U.S. 13; 72 L.Ed. 446) is that if a state has the right to prohibit an act, its grace in permitting the act *Page 531 
may be attended by the imposing of conditions. See, also, Kawko
v. Howe Co., 129 N.J. Law 319. The application of the principle to the instant case is that the state has the right, in the public interest, to prohibit the sale of securities except by license following application and the submission of proofs. For facility of trade it permits dealers to engage freely in their business subject, however, to the conditions and the restraints imposed by the statute. As was said in Stevens v. Television,Inc., supra, "This is not a case seeking a personal recovery against the defendants; it is to foreclose them. The state is not asking anything of them; it wants nothing from them."
We conclude that the proceedings are not in personam in the sense that personal service within the state upon the non-resident defendants was necessary in order to permit the decrees to be entered; that neither the authorizing statute in the respects reviewed, the suits themselves, the orders to show cause nor the decree under appeal was violative of either the state or the federal constitution; and that no one of the defendants has been aggrieved in respect of the matters properly before us.
The orders and the decree appealed from are affirmed. The records will be remanded to the Court of Chancery, there to be dealt with in manner consistent with this opinion.
For affirmance — THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 15.
 For reversal — None. *Page 532