**DILATUSH v. HIGHFILL et al.**

No. 12716.

Circuit Court of Appeals, Eighth Circuit.

Feb. 2, 1944.

W. Clifton Banta and J. M. Haw, both of Charleston, Mo. (Roy S. Sigler, of Jonesboro, Ark., on the brief), for appellant.

Archer Wheatley, of Jonesboro, Ark. (Herbert Gannaway, of Memphis, Tenn., on the brief), for appellees H. Highfill and Valley Credit Co..

Before SANBORN, and WOODROUGH, Circuit Judges, and HULEN, District Judge.

WOODROUGH, Circuit Judge.

### Statement.

This appeal is taken by Mrs. Lulu J. Dilatush to reverse a judgment of the District Court in Arkansas dismissing her action for want of jurisdiction. At the commencement of the action she was a citizen of Illinois and the defendants named in her complaint, who were served with process,. were her son, R. E. Dilatush, a citizen of Arkansas; H. Highfill, a citizen of Arkansas, and the Valley Credit Company, a Missouri corporation. The amount in controversy was in excess of $3,000, exclusive of interest and costs, but the defendants Highfill and the corporation moved the court for realignment of parties, alleging that the plaintiff's son, R. E. Dilatush, was not actually or properly a defendant in the cause, that there was no conflict of interest between him and the

plaintiff, that he actually desired the plaintiff to prevail, that he was a necessary party to the action but that he should be aligned as a party plaintiff. So aligned as a party plaintiff, diversity of citizenship between the parties to sustain the federal jurisdiction was lacking and dismissal was prayed on that ground. Evidence was taken and hearing was had on the issue of jurisdiction and the court made its findings and conclusions against the plaintiff and the dismissal followed. On this appeal appellant contends that the court erred in realigning the defendant R. E. Dilatush as a party plaintiff.

The cause of action set out in Mrs. Dilatush's complaint is epitomized as follows:

She alleges that on June 1, 1938, she was the owner of a note for $10,000, dated June 1, 1937, and one for $13,000, dated February 1, 1938, both due on demand, and secured by a deed of trust on a large acreage of land in Mississippi County, Missouri, described in her complaint, and all executed by defendant R. E. Dilatush; that the other defendants were, on and prior to June 1, 1939, equally interested and associated together with defendant R. E. Dilatush in the operation and management of said real estate and acting in concert, for the purpose of deceiving, cheating and defrauding plaintiff (appellant), induced her to assign and deliver her notes and deed of trust to appellee Highfill so that he could foreclose the deed of trust, buy the land in in his own name, and defeat other creditors, particularly Brown Little, who had procured a judgment against R. E. Dilatush and caused said lands to be 'sold thereunder; that the consideration for the transfer of the notes was the promise that when H. Highfill obtained title to the lands he would either give appellant a deed of trust thereon to secure the debt to her or sell the land and pay her the amount of the notes; that there were prior deeds of trust on said lands; that said H. Highfill, after getting the notes, caused the deed of trust to be foreclosed, had the trustee's deed made to him as purchaser at such foreclosure, and thereafter sold the lands at private sale for $90,000, of which $43,755.99 consisted of a debt secured by a prior deed of trust; and that the defendants wholly failed and refused to either secure the debt to appellant or pay her. She alleged that the amount due her at the time her petition was filed, principal and interest, was $32,130.22, for which she prayed judgment against the defendants.

The substance of the evidence taken on the issue of the alignment of parties, upon which the jurisdiction of the federal court depended, is stated by appellant and accepted by appellees as follows:

At the hearing on the motion to realign parties on April 27, 1943, W. Clifton Banta testified that, as an attorney, he had represented defendant, R. E. Dilatush, in other matters. That R. E. Dilatush had given him a full statement of the facts in this case and asked him if he would represent his mother, the plaintiff. That he then entered into a contract of employment with Lulu J. Dilatush, plaintiff, and later requested J. M. Haw to become associated with him in the case. That they first filed suit against all defendants herein in the Circuit Court of Mississippi County, Missouri, and later in the Circuit Court of Dunklin County, Missouri, both suits being dismissed because of lack of service. That defendant R. E. Dilatush has never denied owing his mother, along with the other defendants; that he has given plaintiff's attorneys free access to his files and has at all times been cooperative in connection with this litigation.

The plaintiff, Lulu J. Dilatush, in her deposition taken April 1, 1943, stated that she originally owned certain lands in West Memphis, Arkansas, which she sold prior to 1937 for $23,000. That she let her son have the money. That he gave her the notes in question to secure payment of that money. That she was 72 years old, and could not get around, and depended on her son, R. E. Dilatush, to look after her business for her. That he got her to sign the notes in question over to Mr. Highfill, and said that Mr. Highfill would see that she got her money or security for it. That she never talked to Mr. Highfill or Mr. Taylor, or anyone besides her son, relative to the money. That her son had the papers with him and took care of her business. That he was to come back from California to attend the trial. That her memory was not so good any more and she had forgotten the particulars, but that she had this money and it was all she had to live on and she thought it was safe and that when her son had her sign the notes over to Mr. Highfill, she thought she would get her money or security. That she still had complete confidence in her son.

R. E. Dilatush, defendant, in his deposition taken April 18, 1943, testified that he owed his mother $23,000, which she had gotten from sale of her West Memphis land. That he had used the money. That he gave her the two notes in question, secured by deed of trust on Missouri land. That Highfill and Valley Credit Company were financing him. That he was sued and his land sold. That Highfill told him to go buy the notes and deed of trust from his mother, which he did, delivering them to Highfill. That he had recommended his attorney to his mother for bringing this suit and had given them access to his files.

H. Highfill, defendant, in his deposition, testified that he was manager of the Valley Credit Company. That the Valley Credit Company owned the notes herein sued for. That they were delivered to them by defendant R. E. Dilatush. He denied that there was ever any agreement made to reimburse the plaintiff, Lulu J. Dilatush, for her notes. He admitted he had entered into certain agreements with R. E. Dilatush, but insisted that they were not bona fide agreements, but were made solely for the protection of R. E. Dilatush in his farming operation.

Plaintiff's Exhibit "A" purports to be a partnership agreement between defendants H. Highfill and R. E. Dilatush, and was introduced to show the joint interests of defendants H. Highfill and R. E. Dilatush at the time of the alleged purchase of the notes in question by defendants.

Plaintiff's Exhibit "B" [a bill of sale from R. E. Dilatush to H. Highfill of the personal property on the Mount Level Plantation for the consideration of $1 and other good, valuable and sufficient considerations] was introduced for the same purpose.

The parties disagree as to the purport of Exhibit "C", which was in evidence as follows:

"Blytheville, Arkansas
"May 23, 1939

"Whereas, on June 1, 1937, R. E. Dilatush executed and delivered to Mrs. Lula J. Dilatush, a deed of trust upon certain lands in Mississippi County, Missouri, which deed of trust is recorded in Book 120, page 302, of the records of Mississippi County, Missouri, and

"Whereas, H. Highfill is now the owner of the notes secured by said deed of trust, and is instituting foreclosure proceedings to have the lands described in said deed of trust sold by the trustee therein named under the power of sale therein conveyed; and

"Whereas, an arrangement satisfactory to the said H. Highfill has been made by R. E. Dilatush relative to said matter in the event the said H. Highfill shall be the high bidder at the foreclosure sale, looking to a re-conveyance to the said R. E. Dilatush of his undivided one-half interest in said lands;

"Therefore, H. Highfill hereby unconditionally binds and obligates himself, or his administrators, executors and heirs in the event of his death, that he will, when requested to do so after purchasing said lands at the foreclosure sale referred to, reconvey to R. E. Dilatush an undivided one-half interest therein by quitclaim deed conveying fee simple title, subject to the other deeds of trust that are upon said land prior to the one being foreclosed, and in said conveyance he will convey all of the lands that are mentioned and described in said deed of trust, conveying, as above stated, an undivided one half interest therein.

"Dated at Blytheville, Arkansas, this 23rd day of May, 1939.

"H. Highfill."

On consideration of the foregoing testimony, in the light of the pleadings, the trial court, at the instance of defendants Highfill and the Missouri corporation, realigned defendant R. E. Dilatush as a party plaintiff and then dismissed the case for want of jurisdiction.

## Opinion.

Our study of the issue before the trial court and the testimony relating to it has not persuaded that realignment of parties was justified. It clearly appears that Mrs. Dilatush claims in this action that she was the owner of two promissory notes aggregating $23,000, executed to her by her son and secured by recorded deed of trust to certain described real property, and that she was induced by representations made to her to assign and deliver her notes to the defendants or to her son for himself and his co-defendants upon express promise that the amounts thereof would, in the course of the transactions described in the complaint, be either paid or secured to her. She charges false representations and false promises and that defendants have cheated and defrauded her of her notes and secur-

ity worth more than $26,000, and she prays judgment therefor against them.

■ It is essential to her action to establish that her son owed her the debt evidenced by his notes and that the named defendants or one or more of them have become legally obligated to pay the amount thereof to her. As each and all of them have failed and refused to pay, it is manifest that controversy exists between her and each of them, and it is immaterial whether the controversy arises from defendants' denial of liability or from their unwillingness to pay or from their inability to do so, or from all such causes.

The trial court found that there was no collision or conflict of interest between the plaintiff and her son and that all the interest that the son has in this suit is upon the side of the plaintiff, but we think such finding is contrary to the evidence. According to the evidence offered on the issue, the son received the full amount represented by his promissory notes from his mother out of her funds and so became indebted to her, and although the complaint asserts that his legal obligation now exists in different form, the evidence is clear that he has not paid or discharged any part of it. Her right to sue him as a party defendant and to obtain a judgment against him on sustaining her allegations is therefore apparent. Such a suit by one who charges refusal by another to pay a debt claimed to be due from him, presents the conflict of interest that constitutes a controversy between the party plaintiff and the party defendant under the statute. 28 U.S.C.A. § 41 (1).

■ The evidence does show, as found by the trial court, that the son is insolvent, that he selected to represent his mother a lawyer who had represented him, first interviewed the lawyer about such employment, held numerous conferences about it, gave the lawyer access to his files, furnished such other information as was necessary to the bringing and prosecution of the action and returned from California to testify on behalf of plaintiff. But there was no evidence that the son was to share in or have any interest in the recovery the mother might obtain in the action. The evidence is that plaintiff's lawyer has contracted with her personally and prosecutes the action for her, and that the son was made a party defendant because her lawyers were of the opinion that he was a proper party defendant. He has no interest on the plaintiff's side in the law suit his mother has brought against him and others to justify aligning him on her side as a party plaintiff. Such realignment is appropriate in suits whose controlling purpose is to establish against resistance of some defendants a condition of advantage and benefit to some party named as defendant in the complaint, as illustrated by the cited case of City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47. There the controlling purpose of the plaintiff's action was to have the defendant City of Indianapolis charged with the performance of the obligations of a certain 99 year lease. The lessor in the lease was named a party defendant, but as its interest in the litigation was to have the defendant City held bound on the lease, the Supreme Court upheld realignment of the lessor as a party plaintiff. No comparable situation exists here. It is undoubtedly true that the son's filial feelings incline him to sympathize with his mother in her loss and to hope for its restoration, but in her complaint he stands charged with failing, neglecting and refusing to pay a debt due to her. The charge being made in good faith, he is a proper party defendant and there is no evidence that there is any other purpose in the suit than to obtain a money judgment against all of those whom plaintiff has charged with being indebted to her, and has made parties defendant in her action. There was no basis for realignment. City of Indianapolis v. Chase National Bank, supra; Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; Venner v. Great Northern R. Co., 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666; Rex Co. v. International Harvester Co., 5 Cir., 107 F.2d 767, 768; Republic National Bank & Trust Co. v. Massachusetts Bonding & Ins. Co., 5 Cir., 68 F.2d 445, 447.

As diversity of citizenship exists between plaintiff and defendants, she is entitled to maintain her suit in the federal court. We have purposely avoided consideration or discussion of the merits of the case.

Reversed and remanded.