**B. J. VAN INGEN & CO., Inc. v. BURLINGTON COUNTY BRIDGE COMMISSION et al.**

Civ. No. 11848.

United States District Court
D. New Jersey.

April 6, 1949.

Pitney, Hardin & Ward and Donald B. Kipp, all of Newark, N.J. (William P. Reiss and Francis W. Brennan, both of Newark, N. J., of counsel), for plaintiff, B. J. Van Ingen & Co., Inc.

John A. Matthews, of Newark, N. J. (James M. Davis, Jr., of Mount Holly, N. J., and Milton B. Conford, of Newark, N. J., of counsel), for defendants, Henry S. Haines and Richard J. Lippincott.

Robert L. Hood, of Newark, for defendant, Burlington County Bridge Commission.

FORMAN, District Judge.

This is a motion to restrain the plaintiff from further prosecuting a declaratory judgment suit filed in this court and to stay the suit until there is a final disposition of an action now pending in the Superior Court of New Jersey, Law Division, Burlington County wherein the present defendants Henry S. Haines and Richard J. Lippincott are plaintiffs and the present defendant Burlington County Bridge Commission and the plaintiff B. J. Van Ingen & Company are named as defendants.

This suit is based upon a complaint for a declaratory judgment alleging that on October 22, 1948, the defendant Burlington County Bridge Commission adopted a resolution authorizing the acquisition of the Tacony-Palmyra and Burlington-Bristol Bridges spanning the Delaware River and connecting Burlington County, New Jersey with the Commonwealth of Pennsylvania and the issuance of Bridge Revenue Bonds for the purpose of financing the cost of acquisition of the said bridges in the principal amount of $12,400,000 and to sell same for cash, at the principal amount plus accrued interest from October 1, 1948 to Ketcham & Nongard, a partnership; that this resolution was duly approved on October 22, 1948 by the Board of Chosen Freeholders of Burlington County and the bonds were issued and sold as aforesaid to Ketchum & Nongard; that subsequent to the above transaction the plaintiff, in good faith, and in reliance upon the validity and binding effect of the bonds and the resolution under which they were bought and sold, and without notice of any infirmity in the bonds or defect in the title of the seller negotiating the same to the plaintiff, or of any other facts or circumstances which might in any way affect the validity or binding effect thereof, and before any payment thereon had become due, purchased $6,200,000 aggregate principal amount of the bonds by paying $6,022,145 (the principal amount less normal underwriting discount), plus accrued interest to the date of payment therefor, in cash; that on or about October 26, 1948 the plaintiff sold $4,712,000 principal amount of these bonds to others and now owns $1,488,000 principal amount thereof. The plaintiff further alleged that the defendants Haines and Lippincott brought a tax payers' suit in the Superior Court of New Jersey, Law Division, Burlington County, to enjoin the defendant Bridge Commission from performing its obligations and agreements under the resolution and that temporary restraints have been issued. Therefor the plaintiff was informed and believed that the Bridge

Commission failed, refused and will continue to fail to make payments contrary to the resolution by reason of the restraints issued by the State court; that Haines and Lippincott and the Bridge Commission are estopped from attacking the validity of the resolution and the bonds under New Jersey law found in N.J.S.A. 27:19–2; and that the state court suit has impaired the value and marketability of the plaintiff's bonds. The plaintiff prays that this court adjudge: (1) that the resolution under attack in the state court was validly and legally adopted and binding in accordance with its terms; (2) that the bonds were validly and legally issued according to their terms; (3) that the Bridge Commission is obligated to perform all covenants, obligations and agreements under said resolution and bonds; (4) that the plaintiff is a holder in due course of the bonds it owns; and (5) that the defendants are estopped to attack the validity and effectiveness of the resolution and bonds. In addition it prayed that upon declaring judgment as above that Haines and Lippincott be enjoined by this court from prosecution of their suit in the state court.

The answer of the defendant Burlington County Bridge Commission to the plaintiff's claim admitted all the essential facts as contended in the complaint with minor exceptions as follows. It left the plaintiff to its proof that it was without knowledge of the infirmity on the bonds purchased and that it hypothecated the bonds as alleged but stated that it believed that the plaintiff had pledged the bonds as collateral security. The Bridge Commission further answered that its counsel advised it that it is estopped to challenge the validity of the bonds because of the provisions of N.J.S.A. 27:19–2 and that it could not meet its obligations on the bonds because of the restraining order obtained in the state court as a result of the suit initiated there by the defendants Haines and Lippincott.

The defendants Haines and Lippincott filed an answer in which they set forth among other defenses that they had initiated a tax payers suit in the Superior Court of New Jersey, Law Division, Burlington County against the Burlington County Bridge Commission and others including the present plaintiff and alleged that in this suit there were raised identical issues as those presented in their state court action. See Haines et al. v. Burlington County Bridge Commission et al., N.J.Super.A.D., 63 A.2d 284. They also filed a counterclaim against the present plaintiff and a cross-claim against the Burlington County Bridge Commission incorporating the allegations set forth in their answer to the main complaint herein and in their suit in the state court.

In filing this motion to stay proceedings in this court the defendants Haines and Lippincott, contended that the state action which they initiated involves a grave question of state policy and that "the interests of the appropriate relationship between federal and state authorities functioning as a harmonious whole" would best be served by such stay. They urged that the pendency of the injunction issued out of the New Jersey court and the existence of entirely unadjudicated questions of New Jersey law as to matters of great public importance dictate the abstention of the application of federal jurisdiction pending the disposition by the New Jersey court of those questions.

The plaintiff argued that neither as a matter of law or discretion should this court stay its hand for the reason that only an injunction pendente lite is in force in the state court action, that the issues of this suit are not the same as in the state court action, and that it is a stranger to the state court action. It urged that the issues in this case are federal in nature and that this court is the most appropriate forum. It further contended that the present motion is premature for the reason that this case will not actually be reached for trial for a long time, no rights of the defendants Haines and Lippincott will be impaired by permitting the case to remain on the calendar because involved questions of procedure remain to be resolved in other suits, and it is impossible to now fully appraise the scope of the over-all litigation.

Both parties have argued extensively that the decision in the case of In re Central R. Co. of New Jersey, 3 Cir., 163 F.2d

44, supports their respective positions. It is unnecessary to go into a recital of the complicated issues of fact and law involved therein because the considerations discussed in this opinion reflect the principles of that case in so far as they are thought to be applicable.

█ In Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, the Supreme Court made it plain that a federal court may not avoid a decision of disputed questions of state law upon which there was no authority merely because the interpretation of that law is difficult and involved. The rule is qualified in other cases where the principle is laid down that a federal court will not decide questions of state law where an important state policy is involved. It was stated in Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, at pages 500-501, 61 S.Ct. 643, 645, 85 L.Ed. 971 that: "Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, whether the policy relates to the enforcement of the criminal law, Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Spielman Motor Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; or the administration of a specialized scheme for liquidating embarrassed business enterprises, [Commonwealth of] Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166; or the final authority of a state court to interpret doubtful regulatory laws of the state, Gilchrist v. Interborough Co., 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652; cf. Hawks v. Hamill, 288 U.S. 52, 61, 53 S.Ct. 240, 243, 77 L.Ed. 610. These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. See Cavanaugh v. Looney, 248 U.S. 453, 457, 39 S.Ct. 142, 143, 63 L.Ed. 354; Di Giovanni v. Camden [Fire] Ins. Ass'n, 296 U.S. 64, 73, 56 S.Ct. 1, 5, 80 L.Ed. 47. This use of equitable powers is a contribution of the courts in furthering the har-

monious relation between state and federal authority without the need of rigorous congressional restriction of those powers. Compare 37 Stat. 1013, 28 U.S.C.A. § 380; Judicial Code, § 24(1), as amended 28 U.S. C. § 41(1), 28 U.S.C.A. § 41(1); 47 Stat. 70, 29 U.S.C. §§ 101–115, 29 U.S.C.A. §§ 101–115."

See also Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Meredith v. City of Winter Haven, supra, 320 U.S. at page 236, 64 S.Ct. at page 11, 88 L.Ed. 9; Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L. Ed. 873; In re Central R. Company of New Jersey, 3 Cir., 163 F.2d 44, 47-48, certiorari denied in Gardner v. State of New Jersey, 332 U.S. 810, 68 S.Ct. 112; Note, 54 Harvard Law Review, 1941, 1379; 54 Yale Law Journal, 1944, 788. Cf. Borchard Declaratory Judgments, 2d Ed. 1941, 659.

In the Meredith case, 320 U.S. at page 236, 64 S.Ct. at page 12, 88 L.Ed. 9, the Court said: "It is the court's duty to do so [stay proceedings] when a suit is pending in the state courts, where the state questions can be conveniently and authoritatively answered, at least where the parties to the federal court action are not strangers to the state action. Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355."

The plaintiff insisted that this is dictum and refers to exceptional circumstances which permit a federal court to stay the exercise of its acknowledged diversity jurisdiction but that such an exception is not applicable to the instant case. But there is further significant language in the Meredith case, wherein the Court comments upon conditions pertinent to this case. It said: "No litigation is pending in the state courts in which the questions here presented could be decided. We are pointed to no public policy or interest which would be served by withholding from petitioners the benefit of the jurisdiction which Congress has created with the purpose that it

should be availed of and exercised subject only to such limitations as traditionally justify courts in declining to exercise the jurisdiction which they possess." 320 U.S. at page 237, 64 S.Ct. at page 12, 88 L.Ed. 9.

Conversely, there are presently two actions pending in the state court in which the plaintiff in this case is named as a party and identical questions are presented: the action instituted by Governor Driscoll in which the present plaintiff was a petitioner for removal to this court, see Driscoll et al. v. Burlington-Bristol Bridge Co. et al., D.C., 82 F.Supp. 975; and Haines et al. v. Burlington County Bridge Commission et al., a phase of which is reported in 63 A.2d 284.

In the latter case Haines and Lippincott raised questions under the 1844 and 1947 Constitutions of New Jersey, N.J.S.A., not previously determined by a New Jersey court in attacking certain New Jersey laws which they alleged the defendants therein claimed justified the transactions under attack. The Appellate Division of the New Jersey Superior Court held: "We are satisfied that within the cited authorities and upon sound reason the plaintiffs' standing should be sustained. They raise constitutional questions and make serious charges of official misconduct affecting the public interest. Plaintiffs instituted their action with dispatch thereby aiding in maintaining the status quo and although the Governor and Attorney General subsequently filed a related· information and complaint, they have not evidenced any desire that plaintiffs be displaced in this proceeding. On the contrary, the Attorney General appeared before the Law Division in support of plaintiffs' restraint pendente lite. Considering all of these circumstances and the interlocutory stage of the proceeding, it seems clear that the interests of complete and effective justice to the public as well as the parties require that the defendants' efforts to dismiss the proceeding, on the ground that the plaintiffs have no standing, should fail." 63 A.2d at page 288.

■ In connection with plaintiff's assertion that it is a stranger to the state court action it claimed that it was not named as a defendant until Haines and Lippincott filed a "further amended complaint" on November 23, 1948. It was on this same day that plaintiff filed its complaint in the present action. The fact that the plaintiff was named in the amended complaint filed on the same date of the filing of the complaint herein would not bar a stay of proceedings in this court where the question affects state policy. In Spector Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101, the federal district court was directed to withhold action pending determination in a state court of a question of local law involving state policy although the state action had not been initiated and the court cited the Pullman and Meredith cases. 323 U.S. at page 105, 65 S.Ct. 152, 89 L.Ed. 101.

■ The plaintiff further argued that there is a marked distinction existing between this suit and the suit brought by Haines and Lippincott in the state court. It cited, for example, that it has sought a declaration that the bonds are valid and binding and that it is a holder in due course. It insisted that these issues are not present in the complaint in the state court and that a comparison of the state court complaint and the pleadings filed herein demonstrate conclusively the disparity between the issues presented in each case and the kind of questions involved. There is no disparity between the issues in each case for the validity of the resolution and bonds had been directly drawn into issue by paragraphs 10 and 12 of the amended complaint filed November 12, 1948 in the Superior Court of New Jersey which alleged as follows:

"10. Plaintiffs show and allege that defendants, Board of Chosen Freeholders of the County of Burlington, and the members of the Burlington County Bridge Commission, in taking the various actions referred to hereinabove respecting the creation of the Burlington County Bridge Commission and the resolutions for acquisition of the Burlington-Bristol and Tacony-Palmyra bridges and the issuance of bonds for the financing thereof, were acting not in the

exercise of their own individual judgment and volition, but under the improper influence, direction, control and solicitation of the defendant, Clifford R. Powell, and others, who at that time had a personal pecuniary interest in the effectuation of said transactions. For said reasons, as well as for the reasons additionally set forth in the complaint and in this amended complaint, all of said transactions were contrary to public policy, and illegal and void."

* * * * * *

"12. The defendants, Tuthill Ketchum, Richard Nongard, and R. H. Murray, individually and as the firm of Ketchum & Nongard, in arranging for the issuance and then purchasing of the Bridge Revenue Bonds, issued by the Burlington County Bridge Commission, as aforesaid, were fully cognizant of all of the circumstances preceding, attending and surrounding the said transactions, as more particularly hereinabove recited, and neither their rights, equities, titles or interests, nor those of any person, firm or corporation who may have purchased any of said bonds from them, nor those of the stockholders of Burlington-Bristol Bridge Company represented herein, may or do have any priority over those of the State of New Jersey and the County of Burlington in and to the Tacony-Palmyra and Burlington-Bristol bridges hereinafter in this amended complaint more fully recited and set forth."

Allegations of a similar tenor were brought home to the plaintiff herein in the "further amended complaint" in the state court action filed November 23, 1948.

In further extension of its claim that it is a stranger to the state court procedure the plaintiff contended that since the bonds are not secured by a mortgage on the bridge properties but are payable solely out of the revenues of the bridges, only a debtor creditor relationship is involved which renders the action in the state court in personam, and the plaintiff, as a nonresident of New Jersey, is immune from being drawn into the state court suit. It argued that if the action should be in rem or quasi in rem, it would still be a stranger to the state court action since Haines and Lippincott failed to allege that the plaintiff has or claims any interest in the bridges or for that matter in and to any res located in the State of New Jersey and lawful service out of the State of New Jersey has not and cannot be made.

Decisions of the court of New Jersey clearly recognize the distinctions between in personam, in rem and quasi in rem actions with the consequent jurisdictional requirements governed by the Fourteenth Amendment to the United States Constitution where service of process is sought upon a nonresident defendant. In Buchman v. Smith, 136 N.J.Eq. 246, at pages 249-250, 41 A.2d 262, 264 affirmed 137 N.J.Eq. 215, 44 A.2d 179, 161 A.L.R. 1069, the law is summarized as follows:

"Originally all equity jurisdiction operated in personam, but in our own Court of Chancery at the present time, the great bulk of litigation may be classified as quasi in rem—in which the res is the matrimonial status, or a decedent's estate, or a trust fund, or the property of a domestic corporation, or land. An action quasi in rem is one in which substituted service by publication is permissible. Our statute, R.S. 2:29–28, N.J.S.A., authorizes this procedure without any limitation based on the character of the suit. Kirkpatrick v. Post, 53 N.J.Eq. 591, 32 A. 267; Post v. Kirkpatrick, 53 N.J.Eq. 641, 33 A. 1059. But the operation of the statute is limited by the due process clause of the Fourteenth Amendment. So we may reach the definition that an action of the kind under consideration is one in which a decree against a nonresident, based on service by publication does not violate due process of law.

"The characteristics of an action quasi in rem are well dealt with in Redzina v. Provident Institution for Savings, 96 N.J. Eq. 346, 125 A. 133; Amparo Mining Co. v. Fidelity Trust Co., 74 N.J.Eq. 197, 71 A. 605; 75 N.J.Eq. 555, 73 A. 249, and Wilentz v. Edwards [134 N.J.Eq. 522, 36 A.2d 423], supra. Fundamentally, jurisdiction depends upon physical power. Jurisdiction in rem rests upon a res within the control of the court and subject to the exercise of its power. The res need not

be in the custody of the court, as it is, for example, when seized on a writ of sequestration. It is enough that the res be within the state and in the possession of the complainant, or a resident defendant who has been brought into court by service within the state and through whom the court can exercise power over the res. The scope and variety of actions quasi in rem have been growing rather steadily for many years as a natural result of narrow territorial bounds of the jurisdiction of American courts, coupled with a diversity of residence of persons holding interests in the same property. If persons living in three or more separate states are concerned, resort to an action quasi in rem is apt to be necessary if their titles are to be adjudicated. This expanding trend was noticed by Justice Case in Wilentz v. Edwards, supra."

Cf. Security Savings Bank v. State of California, 263 U.S. 282, 286-289, 44 S.Ct. 108, 68 L.Ed. 301, 31 A.L.R. 391; Pennington v. Fourth National Bank, 243 U.S. 269, 37 S.Ct. 282, 61 L.Ed. 713, L.R.A.1917F, 1159; Restatement of the Law, Judgments, 1942, pp. 5-9; Goodrich on Conflict of Laws, 2d Ed., §§ 65, 66, 67.

In the recent case of Solomon v. Yudkin-Krell, Inc. et al., 63 A.2d 715, 716, the Superior Court of New Jersey, Chancery Division, in discussing actions in rem and quasi in rem, cited the following language from Amparo Mining Co. v. Fidelity Trust Co., supra, setting forth the essential elements of a quasi in rem action under which service of process on a nonresident defendant was authorized:

"An action quasi in rem is a proceeding against the defendant personally although the real object is to deal with particular property. It depends upon whether there is a res in this State upon which the judgment can operate, without any personal action required of the defendant. Amparo Mining Co. v. Fidelity Trust Co., 74 N.J. Eq. 197, 71 A. 605, affirmed 75 N.J.Eq. 555, 73 A. 249; Cameron v. Penn Mutual Life Ins. Co., 111 N.J.Eq. 24, 161 A. 55.

"Amparo Mining Co. v. Fidelity Trust Co., supra, concerned title to shares of stock of a New Jersey Corporation. The defendant was a foreign corporation and was brought into court by substituted service. Objection was made to such service. It was there held that the action was one quasi in rem and the essential elements of such an action were there set forth as follows (74 N.J.Eq. 197, 71 A. 607):

" '(1) A res located within the territorial limits of the state in such a way that the state can, if it see fit to do so, exercise absolute power to control and dispose of it;

" '(2) A course of judicial procedure, the object and result of which are to subject the res to the power of the state directly by the judgment or decree which is entered, as distinguished from a course of procedure which only affects or disposes of the res by compelling a party to the action to control or dispose of the res, in accordance with the mandate of the judgment or decree;

" '(3) A course of judicial procedure on its face directed specifically toward the res so as to disclose this res to the defendant when reasonably notified of the action.' "

Mortgages on realty were involved in the Buchman case and it was pointed out that they were interests and liens upon lands situated in New Jersey which gave the court in rem jurisdiction over the action. Herein, the bridges are partly located within the State of New Jersey and the income from tolls are totally within the State with disbursements restrained in accordance with the order of the Superior Court of New Jersey.

"The Law Division's order for restraint pendente lite maintained the status quo as it existed at the filing of the plaintiffs' complaint; *it prevented further steps in pursuance of the transactions under attack and transference out of the State of income from the operation of the bridges; * * *.*" Haines v. Burlington County Bridge Commission, 63 A.2d 284, 288-289. (Italics supplied.)

The present plaintiff is one of the bondholders whose bonds are secured by the revenues realized from the tolls of the bridges. Its complaint in essence charged that these revenues give value to

the bonds it holds and by the action of the defendants Haines and Lippincott it is restrained from receiving its share of those revenues. In seeking a ruling on the validity of the bonds in this court, it raises an issue present in the action now pending in the court of New Jersey. There can be no doubt that these revenues, the income from the tolls, collected and being collected for the use of the bridges and restrained pendente lite in the hands of the Bridge Commission, constitutes the res in this action. When the New Jersey court exercised jurisdiction over those revenues, it effectively assumed jurisdiction over a subject matter that was quasi in rem in dispute. That jurisdiction was assumed by the New Jersey court on November 4, 1948, 63 A.2d at page 284, and the suit at bar was not instituted until November 23, 1948. Under these circumstances, the plaintiff cannot here justify a position that it is a stranger to the state court proceedings. Indeed, it might have been asserted that this case comes within the rule governing the relationships between federal and state courts, that when a state court obtains prior jurisdiction of the res, the federal court is ousted of jurisdiction. Palmer v. State of Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435; Kline v. Burke Construction Co., 260 U.S. 226, 229, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077; Toucey v. New York Life Insurance Co., 314 U.S. 118, 136, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967; United States v. Kensington Shipyard & Drydock Corp., 3 Cir., 169 F.2d 8, 11. Nor does the claim made by the plaintiff that in the event that the action in the state court is ultimately held to be quasi in rem, the purported service upon it was bad for failure to provide in the summons served upon it thirty five days in which to answer pursuant to New Jersey Superior Court Rule 3:12–1, justify the position that it is a stranger to the state court proceeding. It can perhaps successfuly attack the service upon it of the summons upon that ground in the state court but actually the res was within the jurisdiction of the state court prior to the institution of this action and the plaintiff being named as a defendant in the "further amended complaint" is pre-cluded from claiming to be a stranger to such proceedings.

■ The plaintiff further argued that because the bridges under discussion span navigable waters over which Congress has the paramount authority to deal and has granted consent to construct the bridges in question by legislation which sets forth means whereby the State of New Jersey and its political subdivision, Burlington County, may acquire such bridges, a federal question is involved for the trial of which this court is the most appropriate forum. The plaintiff herein advanced a somewhat similar proposal when it argued that this court should not remand the case of Driscoll et al. v. Burlington-Bristol Bridge Company, et al., and this argument was rejected in that case for the reasons expressed in the opinion filed therein, D.C., 82 F.Supp. 975. The opinion there expressed is further buttressed by the language of the Supreme Court in the case of the International Bridge Co. v. New York, 254 U.S. 126, at page 133, 41 S.Ct. 56, 59, 65 L.Ed. 176, as follows: "The Act does not make Congress the source of the right to build but assumes that the right comes from another source, that is, the State. It merely subjects the right supposed to have been obtained from there to the further condition of getting from Congress consent to action upon the grant."

Applied to the instant case, this argument of the plaintiff has no merit.

■ The reasoning behind plaintiff's final point that the motion to stay proceedings herein is premature is not persuasive and cannot be held to be a bar to the ascertainment by the defendants Haines and Lippincott of whether they are to go forward in one court or the other or both.

■ In view of the foregoing considerations and the fact that the defendants Haines and Lippincott have raised in the state court "constitutional questions and make serious charges * * * affecting the public interest", 63 A.2d at page 288, which have immediate impact upon the questions raised by the plaintiff in its complaint herein, it would be an abuse of discretion on the part of this court not to stay its hand. Accordingly, the defendants

Haines and Lippincott are entitled to have granted their motion to restrain the further prosecution of this action until their suit in the Superior Court of New Jersey is terminated.

However, there appears to be a deeper and more fundamental issue in this suit which goes to the question of whether any jurisdiction is established in this court. Although none of the parties raised the question of jurisdiction, there is an ever present duty upon the court to satisfy itself that it is acting within the scope of jurisdiction conferred upon it by law. Cf. Kresberg v. International Paper Co., 2 Cir., 149 F.2d 911, 913, certiorari denied 326 U.S. 764, 66 S.Ct. 146, 90 L.Ed. 460. During study of the question raised by the parties to this motion serious doubts assailed the propriety of exercising jurisdiction which require resolution.

The attention of the parties was directed by the court to the holding in Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47, wherein the plaintiff Bank sought to have the defendant City of Indianapolis charged with a certain 99 year lease and in which the lessor in the lease was named as a party defendant. When the case came before the United States Supreme Court on certiorari to review the reversal of a judgment which held the lease in question invalid, that court found that the interest of the lessor in the litigation was to have the defendant City held bound on the lease and that when the parties were realigned in accordance with their true interests, no diversity of citizenship existed thereby requiring dismissal of the suit. At 314 U.S. pages 69-70 and 76-77, 62 S.Ct. at page 17 the court stated:

"To sustain diversity jurisdiction there must exist an 'actual', Helm v. Zarecor, 222 U.S. 32, 36, 32 S.Ct. 10, 11, 56 L.Ed. 77, 'substantial', Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 81, 41 S.Ct. 39, 41, 65 L.Ed. 145, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss,

3 Cranch 267, 2 L.Ed. 435. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.' [City of] Dawson v. Columbia Avenue Saving Fund, Safe Deposit Title & Trust Co., 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interests', Dawson v. Columbia Trust Co., supra, 197 U.S. at page 181, 25 S.Ct. at page 421, 49 L.Ed. 713, exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit,' East Tennessee, V. & G. R. v. Grayson, 119 U.S. 240, 244, 7 S.Ct. 190, 192, 30 L.Ed. 382, and the 'primary and controlling matter in dispute', Merchants' Cotton Press Co. v. Insurance Co. of North America, 151 U.S. 368, 385, 14 S. Ct. 367, 373, 38 L.Ed. 195. These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts and this Court.

\* \* \* \* \* \*

"These requirements, however technical seeming, must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts, and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts. See Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 255, 25 S.Ct. 251, 257, 49 L.Ed. 462, and Ex parte Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853. The dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business. See Friendly, The Historic Basis of Diversity Jurisdiction, 41 Harv. L.Rev. 483, 510; Shamrock Oil Corp. .v.

Sheets, 313 U.S. 100, 108-109, 61 S.Ct. 868, 872, 85 L.Ed. 1214; Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248. 'The policy of the statute (conferring diversity jurisdiction upon the district courts) calls for its strict construction. The power reserved to the states, under the Constitution * * * to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution * * *. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' Healy v. Ratta, supra, 292 U.S. at page 270, 54 S.Ct. at page 703, 78 L.Ed. 1248. In defining the boundaries of diversity jurisdiction, this Court must be mindful of this guiding Congressional policy. See Hepburn & Dundas v. Ellzey, 2 Cranch 445, 2 L.Ed. 332; [Corporation of] New Orleans v. Winter, 1 Wheat. 91, 4 L.Ed. 44; Morris v. Gilmer, 129 U.S. 315, 328, 329, 9 S.Ct. 289, 293, 32 L.Ed. 690; Coal Company v. Blatchford, 11 Wall. 172, 20 L.Ed. 179; Shamrock Oil Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214; and compare Old Grant v. M'Kee, 1 Pet. 248, 7 L.Ed. 131; [Town of] Elgin v. Marshall [Minnesota], 106 U.S. 578, 1 S. Ct. 484, 27 L.Ed. 249; Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135."

The parties were requested to argue the question of jurisdiction prompted by an inquiry as to whether the Bridge Commission was an adversary party to the plaintiff or whether the plaintiff and the Bridge Commission are not in actuality on the same side of the controversy. If they were justifiably realigned in the latter position, did there not exist, as plaintiffs, one party from without the state, Van Ingen, and one party from within the state, the Bridge Commission, arrayed against defendants who are citizens of the state Haines and Lippincott? In such situation how could there be jurisdiction in this court over the action?

In response the plaintiff urged that in order to determine jurisdiction the factual situation at the filing of the complaint governs, and, if diversity jurisdiction was present at that time, it is not affected by the filing of a crossclaim and counterclaim. It insisted that the mere fact the Bridge Commission interposed no active defense to the complaint does not indicate a community of interest but only a lack of defense. Contending that it primarily seeks a declaration of the validity of the bonds it holds and of the resolution under which those bonds were issued, the plaintiff argued that the mere fact that the Bridge Commission cannot and will not grant to it the relief it seeks shows an actual controversy between the parties. The plaintiff argued that because Haines and Lippincott appear herein as well as in the state court as Burlington County taxpayers that they are appearing as representatives of the County. Since the Bridge Commission is an agency of the County, it insisted that the interest of the Commission and Haines and Lippincott must be aligned on the same side of the controversy even though they may take differing positions in the matter. Finally it was urged that Haines and Lippincott are not even parties for an adjudication of the paramount issues but that the relief sought against them is merely incidental to a declaration of the validity of the bonds and the resolution in question, and that only diversity of citizenship between indispensable parties is required to sustain the diversity jurisdiction of a federal court.

There is no disagreement with the plaintiff's contention that the paramount issue in this suit as defined by its allegations and made out in its prayer is whether the bonds held by it are valid bonds issued pursuant to a valid resolution of the Bridge Commission. But it is likewise true that no controversy exists between the Bridge Commission and the plaintiff as to this issue. A mere comparison of the allegations of the complaint and the answer of

the Bridge Commission demonstrates that no real and substantial question exists between these parties.[1]

If any doubt that the interests of the plaintiff and the Bridge Commission are identical survives a comparison of the

---

[1] Paragraph 6 of the complaint states: "On or about October 22, 1948, the defendant Bridge Commission duly adopted, in accordance with said New Jersey statute, a Resolution of that date, (herein sometimes referred to as the 'Resolution'), providing, among other things, for the creation, issuance and sale of 'Burlington County Bridge Commission Bridge Revenue Bonds', (herein sometimes referred to as the 'Bonds'), in the aggregate principal amount of $12,400,-000, setting forth the terms and conditions of the issue thereof, the obligations, agreements and covenants of the Bridge Commission, the rights of the holders of the Bonds, the time and manner of payment thereof, the disposition of the tolls and other revenues from the operation of two bridges now owned by said Bridge Commission, which bridges are commonly known as the Tacony-Palmyra Bridge and the Burlington-Bristol Bridge; and providing, further, for the payment of the interest on and principal of the Bonds out of the tolls and other revenues from the operation of said bridges. Reference is hereby made to said Resolution for a specification of the terms and provision thereof. A true copy of said Resolution is attached hereto as Exhibit 'A' and hereby made a part hereof."

The Bridge Commission answer states: "It admits the allegations of Paragraph Six of the Complaint."

Paragraph 7 of the complaint states: "Subsequent to the adoption of the Resolution and pursuant to the provisions thereof, the defendant Bridge Commission caused the bonds in the aggregate principal amount of $12,400,000 and dated October 1, 1948, to be executed and delivered to Ketcham & Nongard of Chicago, Illinois, against payment to said Bridge Commission of the principal sum of $12,400,000, plus accrued interest to October 22, 1948.

The Bridge Commission answer states: "It admits the allegations of Paragraph Seven of the Complaint, and this defendant further alleges that the said bonds were executed and delivered on the 22nd day of October, 1948."

Paragraph 11 of the complaint states: "Said bonds have been authorized and issued in accordance with the Constitution and statutes of the State of New Jersey, and constitute valid and legally binding obligations of said Burlington County Bridge Commission, New Jersey."

The Bridge Commission answer states:

"Defendant admits the allegations of Paragraph Eleven of the Complaint."

Paragraph 13 of the complaint states: "On or about October 26, 1948, a suit was instituted in the Superior Court of New Jersey, Law Division, Burlington County, by defendants Haines and Lippincott as taxpayers of Burlington County to enjoin the defendant Bridge Commission from performing its obligations, covenants and agreements under the Resolution; and temporary restraints enjoining the Bridge Commission have been issued in said cause."

The Bridge Commission answer states: "Defendant admits the allegations of Paragraph Thirteen of the Complaint, and affirmatively alleges that a restraint was entered in said cause of action by the Superior Court of New Jersey, Law Division, Burlington County, on November 4th, 1948, enjoining this defendant pending final disposition of that cause of action from taking any further steps or proceedings under the Bond Resolution referred to in this Complaint, and requiring that the defendant deposit all receipts from the operations of the Tacony-Palmyra and Burlington-Bristol Bridges in a general account, and to expend therefrom only such sums as are necessary for the operation, maintenance, and protection of the bridge properties, and further allege that the said Superior Court of New Jersey, Law Division, Burlington County, on the 15th day of November, 1948, entered an Order appointing one Mark A. Sullivan of Hudson County, New Jersey, receiver of the bridge properties, and further ordering and directing that the said receiver reestablish the bridge tolls to rates which had been charged prior to the acquisition of those properties by the defendant. Said Order of November 15th, 1948, was stayed by the Appellate Division of the Superior Court of New Jersey, by an Order entered on the 19th day of November, 1948, and appeals have been taken by this defendant to the said Appellate Division from the Order of November 4th, and that of November 15th, 1948, wherein argument was had before the said Appellate Division on the 13th day of December, 1948, and decision reserved by that court."

Paragraph 14 of the complaint states: "Plaintiff is informed and believes and therefore alleges that the defendant Bridge Commission has failed and refused and will continue to fail and refuse

complaint and the Bridge Commission answer thereto, it is dissolved by comparing the answers of the plaintiff and the Bridge Commission to the counterclaim and cross-claim of the defendants Haines and Lippincott.[2] The admissions therein clinch

to make payments to such special accounts, contrary to its agreements contained in Article V of the Resolution, as aforesaid, because of said restraints issued out of the Superior Court of New Jersey, as aforesaid."

The Bridge Commission answer states: "Defendant admits the allegations of Paragraph Fourteen of the Complaint for the reason stated therein, and further by reason of the Order Appointing Receiver, dated November 15th, 1948."

Paragraph 15 of the complaint states: "Title 27, Chapter 19, Article 2 of the New Jersey Revised Statutes provides among other things that: 'All such provisions of said resolution and all such covenants and agreements shall constitute valid and legally binding contracts between the commission and the several holders of the bonds, regardless of the time of issuance of such bonds, and shall be enforceable by any such holder or holders by mandamus or other appropriate action, suit or proceeding at law or in equity in any court of competent jurisdiction.' By reason thereof and of the recitals in the Resolution and Bonds in paragraph 10 above, defendant Bridge Commission and defendants Haines and Lippincott are estopped from attacking the validity and binding effect of the Resolution and of the Bonds held by plaintiff as aforesaid."

The Bridge Commission answer states: "Defendant admits the allegations of Paragraph Fifteen of the Complaint, insofar as they relate to Title 27, Chapter 19, Article 2, of the New Jersey Revised Statutes, and allege that they have been advised by counsel that under the law they are estopped from attacking the validity and binding effect of the resolution, and the bonds held by the plaintiff as aforesaid."

Paragraph 16 of the complaint states: "The attack upon the validity and effectiveness of the Resolution and the Bonds as aforesaid has impaired the value of plaintiff's bonds, their marketability and their value as collateral security for plaintiff's loan aforesaid."

The Bridge Commission answer states: "Defendant admits the allegations of Paragraph Sixteen of the Complaint."

The plaintiff prays:

"A. For a declaratory judgment

"(1) adjudging that said Resolution was validly and legally adopted and is binding upon the defendants in accordance with its terms, that the Bonds issued thereunder were validly created and issued and are binding instruments in accordance with their terms, and that the defendant Bridge Commission is obligated to perform all the obligations, covenants and agreements on its part to be performed under and pursuant to the Resolution and the Bonds;

"(2) adjudging that plaintiff is a holder in due course of the Bonds owned by it;

"(3) adjudging that defendants are estopped from attacking the validity and effectiveness of the Resolution and the Bonds.

"B. For an order to protect or effectuate the judgment of this Court commanding the defendants Haines and Lippincott to stay and discontinue the pending cause instituted by them in the Superior Court of New Jersey;

"C. For an order directing the defendant Bridge Commission to perform fully all the obligations, covenants and agreements on its part to be performed under the terms of the Resolution and the Bonds; and

"D. For such other and further relief as may be just and equitable."

[2] In paragraph 23 of the First Separate Defense (adopted for the crossclaim and counterclaim) Haines and Lippincott alleged: "The plaintiff herein, B. J. Van Ingen & Co., Inc., knew all of the facts and circumstances concerning said transaction, which in law made such transaction illegal and unconstitutional, or knew such facts as made it chargeable with notice of all of said facts. Whether or not it had the knowledge or notice of facts herein recited, said plaintiff had no rights, equities, titles or interests prior in rank to those of the State of New Jersey and the County of Burlington in and to the Tacony-Palmyra and the Burlington-Bristol bridges, or to the revenues thereof, or to enforce any purported obligation of the Burlington County Bridge Commission which would make such revenues applicable to meet claims under said bonds in derogation of the rights of the State of New Jersey and County of Burlington as aforesaid."

The Bridge Commission answered: "It denies the allegations of paragraph 23 of the first defense."

The plaintiff answered: "It denies the allegations of paragraph 23 of said First Defense."

In paragraph 2 of the Fourth Separate Defense (adopted for the crossclaim and

beyond the remotest suspicion the proposition that there is no real and substantial controversy existing between the plaintiff and the Bridge Commission. Admittedly the facts forming the basis for realignment must have existed at the time of filing of the complaint, Texas Pacific Coal & Oil Co. v. Mayfield, 5 Cir., 152 F.2d 956, but

counterclaim) Haines and Lippincott alleged:

"Article I, Paragraph 19, of the Constitution of the State of New Jersey provided, prior to January 1, 1948, as follows: 'No county, city, borough, town, township or village shall hereafter give any money or property or loan its money or credit, to or in aid of any individual, association or corporation, or become security for, or be directly or indirectly the owner of, any stock or bonds of any association or corporation.'

"Article VIII, Section III, Paragraph 2 of the Constitution of 1947, effective January 1, 1948, is identical therewith.

"Said defendants show and allege that the resolution of the Burlington County Bridge Commission authorizing the acquisition by said commission of the corporate stock of the Burlington-Bristol Bridge Company and the Tacony-Palmyra Bridge Company, and the actual acquisition of said stock pursuant to said resolution, as hereinabove recited, were in contravention of the said provision of the Constitution of the State of New Jersey and consequently the entire transaction for the acquisition of said bridges and for the financing thereof, together with all acts in pursuance and furtherance thereof, was unconstitutional, and null and void."

The Bridge Commission answered: "Defendant denies the allegations of the fourth defense except that it admits that Article I, Paragraph 19, of the Constitution of the State of New Jersey, prior to January 1st, 1948, provided as set forth, and that the Constitution of 1947 in that respect is identical therewith."

The plaintiff answered: "It denies the allegations of paragraph 2 of the Fourth Defense in said defendants' answer (which is made a part of their counterclaim against plaintiff), except that it admits that Article I, paragraph 19 of the Constitution of the State of New Jersey provided, prior to January 1, 1948, as therein set forth, and that Article VIII, Section III, paragraph 2 of the Constitution of 1947, effective January 1, 1948, is identical therewith and prays leave to refer to said Constitutions for a specification of the terms and provisions thereof."

Both the plaintiff and the Bridge Commission set forth separate defenses to the counterclaim and crossclaim. Their respective First Separate Defenses were identical in meaning with slight changes in form. In essence, they claimed that the Bridge Commission was empowered by Acts of Congress to purchase the bridges in question independent of any state legislation and set forth the dates when the bridges were completed. In their Second Separate Defenses, they alleged that the bonds were issued pursuant to state legislation which provided in part that the bonds issued thereunder were contractual obligations in the hands of holders who had paid therefor, and that the State of New Jersey would not take or perform any act or step to defeat the lien of interest and principal thereof.

In paragraph 8 of the complaint, the plaintiff alleged: "Thereafter plaintiff, on the same day, in good faith and in reliance upon the validity and binding effect of the Bonds and the Resolution, and without notice of any infirmity in the Bonds or defect in the title of the seller negotiating the same to it, or of any other facts or circumstances which might in any way affect the validity or binding effect thereof, and before any payment thereon had become due, purchased $6,200,000 aggregate principal amount thereof plus accrued interest to the date of payment. On or about October 26, 1948, plaintiff sold $4,712,000 principal amount thereof to others and now owns $1,488,000 principal amount thereof."

The Bridge Commission answered: "Defendant has no knowledge as to the accuracy of the allegations in Paragraph Eight of the Complaint, and leaves plaintiff to its proof thereof."

However, in paragraph 2 of its Second Separate Defense, the Bridge Commission asserted to the crossclaim: "The said revenue bonds of the defendant, Burlington County Bridge Commission, are in the hands of bonafide holders who have paid the full value thereof, and the defendants, Henry S. Haines and Richard J. Lippincott, as citizens of the County of Burlington and the State of New Jersey, are estopped from denying or contesting the validity or effect of such bonds."

In their Third Separate Defenses the plaintiff and Bridge Commission reserved the right to strike the counterclaim and crossclaim.

the counterclaim and crossclaim herein raise no facts not existing at the time of filing of the complaint.

The plaintiff cited a number of cases which it claimed demonstrated that realignment is improper: Township of Harter v. Kernochan, 103 U.S. 562, 26 L.Ed. 411; Matter of Reisenberg, 208 U.S. 90, 28 S.Ct. 219, 52 L.Ed. 403; Till v. Hartford Accident & Indemnity Co., 10 Cir., 124 F.2d 405; Dilatush v. Highfill, 8 Cir., 140 F.2d 741; Texas Pacific Coal & Oil Co. v. Mayfield, 5 Cir., 152 F.2d 956; Maljamar Oil & Gas Corporation v. Malco Corporation, 10 Cir., 155 F.2d 673; Thomas v. Thomas, 5 Cir., 165 F.2d 332.

In Township of Harter v. Kernochan, supra, two taxpayers and the township filed a state court action naming as defendants, state, county, and township officials and the unknown and known holders of bonds issued by the township. The purpose of the action was to have declared bonds of the township as not binding because issued without authority. Both plaintiffs and defendants were citizens of Illinois with the exception of possible unknown bondholders served by publication. The officials made no defense and no bondholders appeared whereupon the state court granted the relief prayed for. Nearly a year later, Kernochan, a non-resident and owner of all the bonds, appeared and petitioned the state court to reopen the cause in conformity with state practice. The peition was granted. He then filed a petition for removal to the federal court on grounds of diversity of citizenship which was granted. A motion to remand was denied and after a hearing on the merits Kernochan prevailed. This decision was affirmed by the United States Supreme Court. In passing upon the alignment of the parties, the court stated: "Disregarding, as we may do, the particular position, whether as complainants or defendants, assigned to the parties by the draughtsman of the bill, it is apparent that the sole matter in dispute is the liability of the township upon the bonds; that upon one side of that dispute are all of the State, county, and township officers and taxpayers, who are made parties, while upon the other is

Kernochan, the owner of the bonds whose validity is questioned by this suit. He alone, of all the parties, is, in a legal sense, interested in the enforcement of liability upon the township. It is, therefore, a suit in which there is a single controversy, embracing the whole suit, between citizens of different States, one side of which is represented alone by Kernochan, a citizen of Massachusetts, and the other by citizens of Illinois. In re Removal Cases, 100 U.S. 457, 25 L.Ed. 593." 103 U.S. at pages 566-567, 26 L.Ed. 411.

If anything, this case dictates the realignment of parties as their actual interests appear regardless of their position as complainants or defendants in the complaint and if there is a real and substantial controversy between citizens of different states, jurisdiction of the federal court attaches. Of course, the converse is likewise true, namely, if the real and substantial controversy develops between citizens of the same state, there is no jurisdiction. The Kernochan case applied to the instant case, seems to lead away from federal jurisdiction rather than toward it as contended by the plaintiff.

Matter of Reisenberg, supra, was cited for the proposition that the lack of resistance by a defendant does not necessarily align him with the plaintiff since such a fact indicates a lack of defense rather than a community of interest. But in this case there was an actual controversy even though the defendant admitted the facts pleaded, the controversy concerning an unsatisfied demand for payment. As cited in the dissenting opinion in the Indianapolis case, 314 U.S. at page 79, 62 S.Ct. 15, 86 L.Ed. 47, under the title In re Metropolitan Railway Receivership 208 U.S. 90, 28 S.Ct. 219, 52 L.Ed. 403, it stands for the proposition that a district court is not ousted of jurisdiction to render a judgment exceeding $3,000 on confession if there is the requisite diversity of citizenship.

In Till v. Hartford Accident & Indemnity Co., supra, there existed antagonistic interests between parties to a declaratory judgment action thereby barring realignment of the parties even though the parties

sought to be realigned were, on some issues, seeking identical relief.

Dilatush v. Highfill, 8 Cir., 140 F.2d 741, certiorari denied 322 U.S. 741, 742, 64 S. Ct. 1145, 88 L.Ed. 1575, held that there was a collision of interest which barred the realignment of parties so as to defeat jurisdiction and the facts of that case are inapplicable to the instant situation.

In Texas Pacific Coal & Oil Co. v. Mayfield, supra, one of the defendants filed an answer and counterclaim adopting parts of the plaintiff's complaint in an action to quiet title. The district court realigned this defendant with the plaintiff and dismissed the action for lack of jurisdiction. The circuit court of appeals reversed holding that this defendant's claim was antagonistic to the plaintiff and that the facts forming the basis for realignment must exist at the time of the filing of the original suit. Here the basis for realignment existed from the commencement of the action and the counterclaim and crossclaim raised no contrary issue.

In Maljamar Oil & Gas Corporation v. Malco Corporation, supra, a trilateral contract was involved. Although the two parties sought to be aligned joined in seeking to maintain the validity of the contract in question, each party to the contract asserted separate and distinct rights and liabilities against the other thereby preventing any community of interests in the rights each claimed in the contract and gave rise to a controversy preventing realignment.

Thomas v. Thomas, supra, merely reiterates the rule as to realignment and held that a district court action should not have been dismissed until after the controlling issues in the case had been determined. Realignment was premature since parties had not come to issue. "We hold that the realignment cannot take place until it has been made to appear that there is no substantial controversy between the plaintiff and the defendant proposed for realignment or that their rights are so identical as to necessitate their being placed on the same side." 165 F.2d at page 334

None of the cases cited by the plaintiff add or detract from the law as set forth in the Indianapolis case but only serve to strengthen the conclusion that the parties herein must be realigned in accordance with their community of interests.

In the Indianapolis case the Supreme Court turned to the "actualities of this litigation". In its search for them it found:

"The facts leave no room for doubt that on the merits only one question permeates this litigation: Is the lease whereby Indianapolis Gas in 1913 conveyed all its gas plant property to Citizens Gas valid and binding upon the City? This is the 'primary and controlling matter in dispute'. The rest is window-dressing designed to satisfy the requirements of diversity jurisdiction. Everything else in the case is incidental to this dominating controversy, with respect to which Indianapolis Gas and the City, 'citizens' of the same state, are on opposite sides. That the case presents 'only one fundamental issue' and that that is the obligation of the City under the lease, Chase admits and indeed insists upon in its brief on the merits. Chase and Indianapolis Gas have always been united on this issue: both have always contended for the validity of the lease and the City's obligation under it.

\* \* \* \* \* \*

"Plainly, therefore, Chase and Indianapolis Gas are, colloquially speaking, partners in litigation. \* \* \* What Chase wants Indianapolis Gas wants, and the City does not want. Yet, the City and Indianapolis Gas were made to have a common interest against Chase when, as a matter of fact, the interests of the City and Indianapolis Gas are opposed to one another. Therefore, if regard be had to the requirements of jurisdictional integrity, Indianapolis Gas and Chase are on the same side of the controversy not only for their own purposes but also for purposes of diversity jurisdiction. But such realignment places Indiana 'citizens' on both sides of the litigation and precludes assumption of jurisdiction based upon diversity of citizenship. We are thus compelled to the conclusion that the District Court was without jurisdiction. \* \* \* \*" 314 U.S. at pages 72–73, 74–75, 62 S.Ct. at pages 17, 18, 86 L.Ed. 47.

794

The command of that case is applicable to the instant situation.

 Adapting the very language of the Supreme Court in the Indianapolis case to the present case it is found that one question permeates this litigation. Are the bonds of the Bridge Commission and its resolution pursuant to which they were issued valid? This is the primary and controlling matter in dispute. Everything else in the case is incidental to the dominating question with respect to which the Bridge Commission and Haines and Lippincott citizens of the same state are on opposite sides. The plaintiff and the Bridge Commission are united on this issue. Both contend for the validity of the resolution and the bonds. Plainly therefore the plaintiff and the Bridge Commission are, colloquially speaking, partners in the litigation. What the plaintiff wants the Bridge Commission wants and Haines and Lippincott do not want. Yet the Bridge Commission and Haines and Lippincott were made to have a common interest when as a matter of fact the interests of the Bridge Commission and the defendants Haines and Lippincott are opposed to one another. Therefore if regard be had to jurisdictional integrity the plaintiff and the Bridge Commission are on the same side of the controversy not only for their own purpose but also for purposes of diversity jurisdiction. But such realignment places New Jersey "citizens" on both sides of the litigation and precludes assumption of jurisdiction based upon diversity of citizenship. Cf. 314 U.S. 72–73, 74, 62 S.Ct. at pages 18, 19, 86 L.Ed. 47.

The realization by the plaintiff of the benefits claimed by it as its due on the bonds of the Bridge Commission the validation of which is prayed for in this suit is barred only by the intervention of the injunction pendente lite obtained by the defendants, Haines and Lippincott, in the state court. Their action stands in the way of a willing fulfillment by the Bridge Commission of its alleged obligations to the plaintiff and presents in their questioning of the validity of the resolution and bonds the real and substantial controversy. Though not of particular significance it cannot go without observation that the interests of the plaintiff and the Bridge Commission are so intertwined that the latter has relied practically entirely on the arguments of the plaintiff.

No other course is left than to align the Bridge Commission and the plaintiff on one side of the controversy in this suit and the defendants Haines and Lippincott on the other side. Thus there appear two plaintiffs, one of which is a citizen of this state, and defendants likewise citizens of this state. The essential diversity of citizenship of the parties disappears and the jurisdiction of this court over the suit is dissolved.

 The final argument made by the plaintiff was that since Haines and Lippincott are not necessary parties and the relief sought against them was merely incidental to a declaration of the validity of the resolution and bonds, diversity of citizenship is required between indispensable parties only and the diversity jurisdiction of this court is sustained as between the plaintiff and the Bridge Commission. This argument cannot prevail because the admissions of the Bridge Commission of the allegations of the plaintiff are such as to leave no justiciable controversy between these parties confronting the court and the complaint of the plaintiff and the answer of the Bridge Commission amount to nothing more than a joint application to the court for an advisory opinion as to the validity of the bonds and the resolution under which they were issued. Cf. Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826.

An order should be taken dismissing the complaint in this action for lack of jurisdiction in conformity with this opinion.